[No. 11807.   Department One.   December 28, 1914.]

THE STATE OF WASHINGTON, *on the Relation of W. L. Gwinn et al., Appellants,* v. R. E. BUCKLIN *et al., Respondents.*[1]

CORPORATIONS—BY-LAWS—FORCE AND EFFECT.  A by-law of a title and abstract corporation providing that each stockholder shall have the right to inspect the books and records of the company at any time during business hours, has all the force and effect of a statute to the same effect.

CORPORATIONS — STOCKHOLDERS — RIGHTS—INSPECTION OF BOOKS.— MOTIVES.  The right of inspection of corporate books, given to stockholders of a title and abstract corporation, cannot be withheld by the corporation on the ground that the only purpose of such inspection was to secure a knowledge of the company's customers and prices, which such stockholders desired to use in aid of a rival abstract company belonging to such stockholders, and to the injury of the business of the corporation.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered October 23, 1913, dismissing mandamus proceedings, after a hearing before the court.  Reversed.

*J. H. Allen,* for appellants.

PARKER, J.—The relators, W. L. Gwinn and R. L. Thomas, stockholders of the Kitsap Title Abstract Company, seek, by mandamus proceedings, to compel the respondents, R. E. Bucklin and E. A. Landolt, the president and secretary respectively of that company, to permit the relators to examine the books and records of the company.  Upon a hearing had in the superior court, judgment was rendered denying the relief prayed for and dismissing the action.  From this ruling and judgment, relators have appealed to this court.

The Kitsap Title Abstract Company is a corporation organized and existing under the laws of this state, having its

[1]Reported in 145 Pac. 58.

capital stock divided into one thousand shares. Relators own 497 shares; respondents own 502 shares, and a third person owns one share of the stock of the company. Respondents are president and secretary respectively of the company. They have the custody of its books and records and the active management of its business. They are willing to accord to relators the privilege of examining the books and records of the company except such books and records as show the list of the customers of the company and the particular prices paid by them for abstracts. Respondents insist that these particular books and records of the company constitute a portion of the good will and trade of the company, and are such trade secrets that, if made known to relators, who are proprietors of a rival abstract company in competition with the Kitsap Title Abstract Company, such knowledge by relators will result to the material injury of the business of the Kitsap Title Abstract Company. In this connection, respondents allege:

"That the only purpose of said W. L. Gwinn in seeking the examination of the books of said company has been to obtain the list of customers of said company, together with the prices quoted to the same for the making of abstracts, so that he may solicit such customers for patronage for the rival company operated by himself and to quote prices below the cost of making such abstracts so as to deprive the Kitsap Title Abstract Company from the patronage of such customers; likewise, the said Gwinn would make use of said information for the purpose of discrediting the work of said Kitsap Title Abstract Company, in so far as it would be possible for him so to do and particularly discredit the management and control of said business by the respondents Bucklin and Landolt."

We assume, for argument's sake, that this allegation and the facts above stated are true, in so far as such facts may be relevant and controlling in this controversy. This constitutes as favorable a statement as can be made from the record in respondents' behalf.

Counsel for appellants contend that they have the absolute right to examine the books and records of the company without such right being impaired in the least by respondents' claim of right to inquire into relators' motive and purpose in making such examination.

We are not here concerned with the mere common law right of stockholders to examine the books and records of the corporation in which they hold stock, which right is not absolute but subject to restrictions governed largely by the circumstances of each particular controversy. The nature and extent of such common law right was reviewed by this court in *State ex rel. Weinberg v. Pacific Brewing Co.*, 21 Wash. 451, 58 Pac. 584, 47 L. R. A. 208. We have no statute in this state bearing upon this subject, but the Kitsap Title Abstract Company has a by-law reading as follows:

"Each stockholder shall have the right to inspect the books and records of the company at any time during regular business hours of said company."

This by-law, we think, has all the force and effect of a statute containing such a provision. *Cummings v. Webster*, 43 Me. 192; *Wyoming Coal Mining Co. v. State ex rel. Kennedy*, 15 Wyo. 97, 87 Pac. 337, 984, 123 Am. St. 1014; 10 Cyc. 351.

In *Johnson v. Langdon*, 135 Cal. 624, 67 Pac. 1050, 87 Am. St. 156, the court had under consideration the claimed right of a stockholder to examine the books and records of a corporation in which he held stock, under a statute of California providing that such records shall "be open to the inspection of any director, member, stockholder," etc. The secretary of the corporation, in resisting the stockholders' claim of right of examination, alleged affirmatively:

"That the object and purpose of the plaintiff is to injure the corporation of which defendant is secretary, and to gain information for the private use of plaintiff, in connection with two other corporations, of which plaintiff is a stock-

holder, engaged in a similar business to that of the corporation represented by defendant."

It was conceded that appellants desired to see the list of the corporation's customers and their contracts. In sustaining the striking out of this defense by the trial court, the supreme court said:

"At common law the stockholders of a corporation had the right to examine, at reasonable times, the records and books of the corporation. (2 Cook on Corporations, sec. 513; *Stone v. Kellogg*, 165 Ill. 204). But the writ would not issue as a matter of course to enforce a mere naked right, or to gratify mere idle curiosity, but it was necessary for the petitioner to show some specific interest at stake rendering the inspection necessary, or show some beneficial purpose for which the examination was desired. (High on Extraordinary Legal Remedies, 3d ed., sec. 310.) But the great weight of the American authorities is to the effect that where the right is statutory it is not necessary for the petition to aver or show the purposes or object of the inspection. Neither is it any defense to allege that the objects and purposes are improper, and that the petitioner desires to injure the business of the corporation. The clear legal right given by the constitution and the statute cannot be defeated by stopping to inquire into motives. If this were so, the stockholder would be driven from the certain definite right given him by the statute to the realm of uncertainty and speculation. The small stockholder—whose rights are as sacred in the eyes of the law as those of the rich owner of the majority of the stock—would be refused the right of inspection given him by the statute, and when he comes into court setting forth his rights, and the fact that he is a stockholder, and has been refused permission to inspect the books, he is met by an answer of the corporation setting forth that he is not seeking the information nor the inspection for any legitimate purpose, and that his motives are improper. In the trial of this affirmative defense witnesses are required and expenses incurred. If the court should find in favor of the corporation, and deny the petitioner's right, he is driven to an appeal. In the appellate court he is met by the rule that a finding of fact based upon conflicting testimony cannot be disturbed. Thus the certain, adequate, and sum-

mary remedy for the right given by statute is driven into the realm of uncertainty, expense, and delay. Such was not the intent of the framers of the constitution, nor of the legislature in enacting the statute. The statute is founded upon the principle that the shareholders have a right to be fully informed as to the condition of the corporation, the manner in which its affairs are conducted, and how the capital to which they have contributed is employed and managed. The shareholder is not required to show any reason or occasion for making the examination. Nor can he be met with the defense that his motives are improper."

This doctrine is adhered to in *Kimball v. Dern*, 39 Utah 181, 116 Pac. 28, Ann. Cas. 1913 E. 166, 35 L. R. A. (N. S.) 134, where the subject is treated at considerable length and many authorities reviewed. Among the decisions which seem to regard the statutory rule as being not quite so unqualified as indicated in the California and Wyoming decisions above noticed, we note that of *Foster v. White*, 86 Ala. 467, 6 South. 88, where, referring to the statute of that state giving the right of inspection, it is said:

"The only express limitation is, that the right shall be exercised *at reasonable and proper times;* the implied limitation is, that it shall not be exercised from idle curiosity, or for improper or unlawful purposes. In all other respects, the statutory right is absolute. The shareholder is not required to show any reason or occasion rendering an examination opportune and proper, or a definite legitimate purpose. The custodian of the books and papers cannot question or inquire into his motives and purposes. If he has reason to believe that they are improper or illegitimate, and refuses the inspection on this ground, he assumes the burden to prove them such. If it be said, this construction of the statute places it in the power of a single shareholder to greatly injure and impede the business, the answer is, the legislature regarded his interests in the successful promotion of the objects to the corporation a sufficient protection against unnecessary or injurious interference. The statute is founded on the principle that the shareholders have a right to be fully informed as to the condition of the corporation, the manner in which its affairs are conducted, and how the

capital, to which they have contributed, is employed and managed."

This language seems somewhat inharmonious within itself. It would seem that, if the custodian of the corporate records cannot question or inquire into the motives or purposes of the stockholder in requesting the examination, that the custodian's right to withhold the privilege of examination is entirely at an end except as to reasonableness of time, yet the court seems to conclude that there may be motives and purposes on the part of the stockholder which would warrant the custodian in withholding the privilege of examination aside from the question of reasonableness of time. We find similar observations by the Maryland court in *Weihenmayer v. Bitner*, 88 Md. 325, 42 Atl. 245, 45 L. R. A. 446-457, where the right of examination was claimed under a statute reading:

"The president and directors of every corporation shall keep full, fair, and correct accounts of their transactions, which shall be open at all times to the inspection of the stockholders or members."

The court said:

"The right thus given to the stockholder is unconditional and unqualified. . . . It is stated in the answer to the petition that Weihenmayer is engaged in the manufacture and sale of hosiery and knit goods, and is a rival and competitor of the Windsor Knitting Mills in business, and that he desired an examination of the books, documents, and records of the corporation for the purpose of obtaining information to be used by him in the conduct of his own business, to the injury and loss of the said corporation. . . . But the petitioner's right would not be forfeited by any such cause. The right is given to him as a stockholder by statute, and is absolute, and not made to depend upon any circumstance but the ownership of the stock. It is easy to see that there might be good reasons for refusing an application; for instance, if it were made for some evil, improper, or unlawful purpose. And, if such purpose were alleged and proved, the writ would be denied."

Whatever the view of the court in this last quoted language is as to reasons and motives on the part of the stockholder warranting the custodian refusing inspection of the records, it is apparent that the fact that such stockholder is interested in a rival concern which is in competition with the corporation and might by the examination of the books of the corporation acquire and use knowledge in aid of the other concern to the detriment of the corporation by way of competition, his right to the inspection of the books would not thereby be affected in the least. It is possible that the Alabama and Maryland courts had in mind a possible inspection of the books and records of the corporation by a stockholder with a view of disclosing some secret process of manufacturing an article, possessed and used by the corporation, or where the motives and purpose of the stockholder would be to get temporary possession of a record for the purpose of mutilation or theft of the record or some other equally unlawful purpose. If the qualifying language of those courts means no more than this, we would be inclined to agree with them; but there is no such unlawful purpose of relators here alleged or shown. We are of the opinion that the inspection of the books and records here sought by relators cannot be withheld from them on the ground that they would thereby acquire knowledge which would be used by them in aid of the business of their other abstract company, to the detriment of the Kitsap Title Abstract Company.

The judgment is reversed, with instructions to the trial court to enter its judgment compelling respondents to permit relators to examine the books and records of the company, including its books and records showing the list of its customers and prices paid by them for abstracts.

CROW, C. J., GOSE, CHADWICK, and MORRIS, JJ., concur.