[No. 14581.    Department One.    July 16, 1918.]

THE STATE OF WASHINGTON, *on the Relation of E. E. Beaty, Respondent,* v. GUARANTEE MANUFACTURING COMPANY *et al., Appellants.*[1]

CORPORATIONS — STOCKHOLDERS — INSPECTION OF BOOKS.    A trade competitor of a corporation cannot, by acquiring a small amount of dormant stock, demand an inspection of the corporate books, minutes, and trade secrets, in the absence of any by-law on the subject of inspecting records; and it appearing that the demand was not in good faith and not in the best interests of the corporation, the inspection allowed will be confined to the book containing the names of the stockholders, according to Rem. Code, § 3701.

Appeal from a judgment of the superior court for King county, Smith, J., entered September 5, 1917, in favor of the plaintiff, in an action for a writ of man-

[1]Reported in 174 Pac. 459.

damus to compel the officers of a corporation to permit a stockholder to inspect corporate records, tried to the court. Modified.

*J. P. Wall* (*Palmer & Askren*, of counsel), for appellants.

*George F. Hannan*, for respondent.

MITCHELL, J.—The Guarantee Manufacturing Company, a corporation, appellant, has its office and principal place of business in Seattle, where, since April, 1912, it has been engaged in manufacturing and selling planer knives, etc., for saw machinery. E. E. Beaty, respondent, has been engaged in the same kind of business in Seattle since February, 1912. Both parties admit a state of active competition between them, one expressing it as "earnest, decided and positive." Appellants Conforth, Smith and Himes have been officers of the corporation since its organization and own all of the 100 shares of its capital stock other than eight held as treasury stock and twelve shares formerly held by one I. G. Tveton, now held by respondent. Formerly, Conforth, president of the company, and respondent were associated in business, but disagreements separated them. Appellant Smith, secretary of the company, at one time worked for respondent, but after a while litigation and ill-feeling arose between them, their business relations ceased, and, in the face of opportunity, they have not spoken to each other the last three or four years. Prior to respondent's purchase of stock, as a result of about three years of special work and experiments and the expenditure of considerable money, the corporation produced and uses a secret and valuable process for treating and finishing steel used by it in manufacturing planer knives, and, indeed, uses special and particular formulas suited to the needs of individual customers. The business of

each improved, the corporation using its profits to enlarge its business. Business rivalry, sometimes of a personal sort, kept ill-feeling alive. I. G. Tveton, from the organization of the corporation, had worked for it, owning twelve shares of the capital stock, until some dispute induced him to quit. For some time prior to quitting, Tveton's twelve shares were pledged to Conforth to secure a loan of $75, now long past due. Rather promptly, upon Tveton's leaving the company, respondent, learning that Tveton owned twelve shares of stock, purchased them for a small amount, and by and in the name of another redeemed them from the pledge to Conforth, and then, through that same other person, had the twelve shares of stock reissued to himself, respondent. Incidentally, it may be mentioned that this is respondent's first venture in the purchase of stock in an industrial concern, while his manufacturing business justifies the use of all his capital.

Within a day or so after buying the twelve shares, respondent demanded of the company an inspection of all its account books, stock books, by-laws, minutes of trustees' and stockholders' meetings, and all other corporation records, for the alleged purpose of finding out the condition of the company; that is, as he says, to find out what his stock was worth and if there were any dividends to be distributed. His demand in this respect was refused by the officers of the company, who further told him that they issued a statement about the first of each year and that he would get one at the proper time. Thereupon respondent instituted this action, alleging ownership of stock, his desire to learn the true condition and management of the business and the value of the stock, to which end he had unsuccessfully demanded an opportunity to inspect all the books and records of the corporation, and praying for a writ of mandate giving him the right of unlimited examina-

tion of the records. Appellants answered, denying generally, and further alleged that all surplus money of the corporation had, with consent of the stockholders, been returned to the business; that the two concerns were business rivals; that respondent had tried, and was continuing to try, to injure appellants' business; that appellants, in manufacturing, used valuable processes and trade secrets, the formulas of which appeared upon their records; and that respondent was not acting in good faith. Trial was had, and, among other things occurring, the by-laws of the corporation were introduced in evidence and are before us. The by-laws do not vouchsafe to a stockholder the right to inspect the books or records of the company at any time. The judgment favored the relator to the extent that he be permitted to inspect the stock book, stock-transfer book, articles of incorporation, by-laws, minutes of board of trustees and of the stockholders' meetings; and it further provides that, in lieu of inspection of the account books, card indexes, etc., appellants should furnish a financial statement "in sufficient detail to give the relator reliable information as to the business condition of said corporation and inform him as to the value of his stock." Appellants admit the judgment protects the corporation against discovery to respondent of any of the trade secrets, but it is contended that the judgment is entirely too broad and places appellants at the mercy of a keen business competitor of personal hostility, and consequently is opposed to the best interests of the corporation.

The rule at common law on this subject is stated in *State ex rel. Weinberg v. Pacific Brewing & Malting Co.*, 21 Wash. 451, 58 Pac. 584, 47 L. R. A. 208, to be:

"The stockholders of a corporation have at common law, for a proper purpose, and at seasonable times, a right to inspect any or all books and records of the

corporation.   While this right is universally recog-
nized, the courts disagree as to what is a proper pur-
pose, or, rather, as to what facts are sufficient to war-
rant the court in directing by mandamus permission
to inspect, where the stockholder has been refused such
by the officers of the corporation.''

The opinion then reviews many authorities, and con-
tinuing, says:

''We believe that these interests will be better pro-
tected by holding that a stockholder of a corporation
has the right, at reasonable times, to inspect and ex-
amine the books and records of such corporation, *so
long as his purpose is to inform himself as to the man-
ner and fidelity with which the corporate affairs are
being conducted and his examination is made in the
interests of the corporation.*   Nor will it be presumed,
when such request is made, that the purpose of the in-
spection is other than in the interest of the corpora-
tion; and, when it is charged to be otherwise, the bur-
den should be on the officers refusing such request, or
the corporation, to establish it.''

Afterwards, this court, in the case of *State ex rel.
Gwin v. Bucklin,* 83 Wash. 23, 145 Pac. 58, L. R. A.
1915D 285, considered this subject from the standpoint
of statute law or its equivalent—a by-law of the cor-
poration—and in the decision, to be clear, the court
first reminds one,

''We are not here concerned with the mere *common
law* right of stockholders to examine the books and
records of the corporation in which they hold stock,
*which right is not absolute but subject to restrictions
governed largely by the circumstances of each partic-
ular controversy.*   The nature and extent of such com-
mon law right was reviewed by this court in *State ex
rel. Weinberg v. Pacific Brewing & Malting Co.,* 21
Wash. 451, 58 Pac. 584, 47 L. R. A. 208, . . .''

Then, after noticing that the corporation in question
in that case had a by-law as follows:  ''Each stock-
holder shall have the right to inspect the books and

records of the company at any time during regular business hours of said company," this court says: "This by-law, we think, has all the force and effect of a statute containing such a provision." The court, proceeding, reviews the authorities, some holding, in effect, that the clear legal right given by the statute cannot be defeated by stopping to inquire into motives, else the stockholder would be driven from the definite right given him by the statute to the field of uncertainty and delay, while other courts, including Alabama and Maryland, are not so strict in observing the statute, because, as they say, in effect, there might be good reason for refusing an application; for instance, if it were made for some evil, improper or unlawful purpose, alleged and proved. Concluding, this court says:

"Whatever the view of the court in this last quoted language is as to reasons and motives on the part of the stockholder warranting the custodian refusing inspection of the records, it is apparent that the fact that such stockholder is interested in a rival concern which is in competition with the corporation and might by the examination of the books of the corporation acquire and use knowledge in aid of the other concern to the detriment of the corporation by way of competition, his right to the inspection of the books would not thereby be affected in the least. It is possible that the Alabama and Maryland courts had in mind a possible inspection of the books and records of the corporation by a stockholder with a view of disclosing some secret process of manufacturing an article, possessed and used by the corporation, or where the motives and purpose of the stockholder would be to get temporary possession of a record for the purpose of mutilation or theft of the record or some other equally unlawful purpose. If the qualifying language of those courts means no more than this, we would be inclined to agree with them; but there is no such unlawful purpose of relators here alleged or shown. We are of the opinion

that the inspection of the books and records here sought by relators cannot be withheld from them on the ground that they would thereby acquire knowledge which would be used by them in aid of the business of their other abstract company, to the detriment of the Kitsap Title Abstract Company.''

So the rule in this state is that, to the extent of rights given by statute or the by-laws of a corporation, the right of a stockholder to inspect the books, records and documents of the corporation may not be abridged or denied except in protection of necessary trade secrets or to combat some evil purpose alleged and proved, such as the theft or destruction of records, or similar improper purpose. While in those particulars beyond the influence of any statute or by-law, the right of a stockholder to inspect the books and records of the corporation shall emanate from a purpose not only to inform himself as to the manner of the conduct of the corporate affairs and the fidelity of its officers, but also that his examination is to be made in the interests of the corporation, which latter, while presumed, may be charged otherwise under penalty of the burden of proof.

Tested by such rules, and in the light of the pleadings and proofs in this case, appellants have just cause for appeal. To digress just a moment, it may be observed that this is not a case of a combination by persons holding a majority of the stock for their own interests to the exclusion and detriment of a minority holder, but rather one wherein, among other unusual circumstances, a person becomes the holder of a small number of shares of stock which had been practically dormant for years, so far as the active management of the affairs of the corporation is concerned, and immediately exacts from the officers of the corporation—business competitors, towards most of whom there is

personal hostility—the opportunity to examine all the books and records of the company for the pretended or alleged purpose of ascertaining the value of his stock and if there was anything to be distributed.

As already seen, there is no by-law of this corporation on the subject of inspecting the records. The only statute of this state touching this matter, so far as this case as presented to us is concerned, is Rem. Code, § 3701, to the effect that the trustees of every incorporated company shall keep a book containing the names of all persons, alphabetically arranged, who are or shall be stockholders of the corporation, and showing the number of shares held by each, which book, during the usual hours of the day, except Sundays and legal holidays, shall be open for the inspection of stockholders.

By specific allegations in the answer, appellants challenge that the interests of the corporation are at the heart of respondent, thus imposing the burden of proof thereof on appellants, which we are convinced by the record in this case they have met. Indeed, it is manifest the learned trial judge formed the same opinion as to the facts, only going too far in the relief ordered.

As seen already, there are cases in which, because of some exigency, a statute or by-law on this subject, according to the cold letter, may possibly not be successfully invoked, while in other circumstances, beyond the terms of a statute or by-law, each case, for the purpose of the application of the rule, is, as we consider this case, unique as to the merits. The provision of the judgment as to inspection of the articles of incorporation is needless, since they are of public record. As to an inspection of the minutes of the board of trustees and of the stockholders' meetings, as provided in the judgment, respondent is not entitled to it, nor

is he entitled to a financial statement to furnish information as to the business condition of the corporation and the value of his stock. Respondent is entitled to examine the books containing the names of the persons who are or shall be stockholders of the corporation, according to § 3701 of the code.

The cause is remanded to the lower court to modify and enter judgment according to these views.

Appellant will recover costs in this court.

MAIN, C. J., FULLERTON, TOLMAN, and PARKER, JJ., concur.