[No. 17670.  Department Two.  June 16, 1923.]

THE STATE OF WASHINGTON, *on the Relation of J. E. Heitman, Respondent,* v. THE FIRST BANK OF WILKESON *et al., Appellants.*[1]

MANDAMUS (79)—JURISDICTION—APPLICATION AND NOTICE—SUF-FICIENCY. Rem. Comp. Stat., §§ 1015-1018, provides the method of issuing writs of mandamus upon application, by an alternative writ fixing a return day, or by a ten-day notice; and thereunder a suit may be instituted by service of the affidavit and application, with ten days' notice of the hearing.

CORPORATIONS (74)—STOCKHOLDERS—INSPECTION OF BOOKS. The improper motives of a relative of the defendant in an action commenced by a bank, in acquiring shares of stock for the purpose of demanding an inspection of the books to aid defendant in his defense to the action, cannot, after the action has been disposed of, be urged to deny the stockholder his right to examine the books of the bank to determine whether improper loans have been made by the bank, there being no evidence of any ulterior motive since the disposal of the case.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered June 14, 1922, upon findings in favor of the plaintiff, in an action for a writ of mandamus to compel the officers of a bank to permit a stockholder to inspect corporate records, tried to the court. Affirmed.

*Conger & Carothers* and *Arthur P. Marx,* for appellants.

*Jno. A. Shackleford* and *Elizabeth Shackleford,* for respondent.

PARKER, J.—The relator, Heitman, commenced this proceeding in the superior court for Pierce county, seeking a writ of mandamus to compel the officers of the defendant bank to allow him to examine its books

[1]Reported in 216 Pac. 9.

and records, which right he claims by virtue of his ownership of shares of the capital stock of the bank. The defendants have appealed to this court from a judgment of the superior court awarding to relator the relief prayed for.

This proceeding was commenced by service upon the defendants of relator's affidavit and application for the writ, accompanied by a notice signed by his attorneys notifying them that he would apply to the superior court for the relief asked at a stated time more than ten days after such service. It is first contended that the superior court did not acquire jurisdiction over the persons of the bank or its officers by such application and notice and service thereof; the argument being that the proceeding must be commenced as an ordinary civil action; that is, by complaint and summons, since the proceeding is in substance a civil action. While the issues presented in such a proceeding, whether of law or fact, are triable as in ordinary civil actions, our mandamus statute plainly differentiates it from an ordinary civil action as to the manner of acquiring jurisdiction over the persons of the defendants. Referring to §§ 1015, 1016, 1017, 1018 [P. C. §§ 8189, 8190, 8191, 8192], of Rem. Comp. Stat., relating to mandamus proceedings, we read:

"§ 1015. The writ must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It must be issued upon affidavit on the application of the party beneficially interested.

"§ 1016. The writ may be either alternative or peremptory. The alternative writ must state generally the allegation against the party to whom it is directed, and command such party, immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed, or to show cause be-

fore the court at a specified time and place, why he has not done so. . . .

"§ 1017. When the application to the court is made without notice to the party, and the writ be allowed, the alternative must be first issued; and if the application be upon due notice and the writ be allowed, the peremptory writ may be issued in the first instance. The notice of the application, when given, must be at least ten days. . . .

"§ 1018. On the return of the alternative, or the day on which the application for the writ is noticed, the party on whom the writ or notice has been served may show cause by answer, under oath, made in the same manner as an answer to a complaint in a civil action."

It seems plain to us that there is thus specially provided two alternative methods of acquiring jurisdiction over the persons of defendants in mandamus proceedings, to wit: (1) by an alternative writ; or (2) by the ten-day notice such as was given in this case. It was so held in substance in our decision in *Smith v. Ormsby,* 20 Wash. 396, 55 Pac. 570, 72 Am. St. 110. We are of the opinion that the trial court did not err in denying the defendants' motion to quash the notice and the service thereof.

It is next contended that relator's motive and purpose in seeking examination of the books and records of the bank is so manifestly improper and foreign to any interest of the bank that the trial court should have denied to him the privilege of such examination. In March, 1921, the bank commenced an action against an uncle of relator, seeking recovery upon a $2,000 promissory note executed by him, of which the bank became the owner by assignment. The uncle's defense to that action was fraud and want of consideration in procuring him to execute the note. The uncle conceived the idea that, if he could have access to the books and

records of the bank, he would thereby acquire information material to his defense in that action; so in October, 1921, while that action was still undetermined, he caused his nephew, this relator, to purchase three shares of the capital stock of the bank, loaning the money therefor to relator. Soon thereafter demand was made by relator, at the instance of the uncle, for the privilege of examining the books and records of the bank. This demand was granted by the officers of the bank and an examination made by relator with the assistance of an accountant. That examination was only of the books of account of the bank, other records, such as minutes wherein might have been found authorizations for the making of certain loans or the want of such authorization, were for some reason not here clearly apparent then not made by relator. It is now claimed in his behalf that the account book examination then so made pointed to the making of some loans by the officers of the bank unlawfully, which, however, would either more clearly appear, or else be shown to the contrary, by an examination of the records of the bank which were not then examined by the relator. After the action of the bank against the uncle had been disposed of, so that there was no longer any reason for his acquiring information to aid him in the defense of that action, relator again demanded of the officers of the bank the privilege of examining its books and records which had not been previously examined by him. This demand was refused by the officers of the bank, and soon thereafter in May, 1922, he commenced this proceeding in the superior court.

If this were a question of relator's right to examine the books of the bank in pursuance of the demand made immediately upon his acquiring the three shares of stock, and a refusal of such demand, under the circum-

stances then existing there would be some substantial
ground for denial of such claimed right, since there does
seem to have then been present an improper motive
on the part of relator and his uncle in seeking such ex-
amination; but that condition has entirely passed.
Surely, because these shares of stock were acquired
by relator, accompanied, at the time of their acquisi-
tion, by such possible improper motive as to his in-
tended use of them, that does not deprive him for all
time of the rights of a shareholder such as he would
ordinarily possess by virtue of the ownership of such
shares by him. So we think it is no longer a question
of the motive and purpose of relator or his uncle at
the time of acquiring those shares; but it is now a ques-
tion of his present motive and purpose in seeking ex-
amination of the books and records of the bank. The
allegations of relator's application, if true, seem to
us to plainly show a lawful purpose on the part of
relator; that is, to disclose as to whether or not loans
have been made by the officers of the bank in an unlaw-
ful manner or in unlawful amounts, and bring to light
information upon which action may be taken if neces-
sary to recover any losses to the bank resulting from
such loans. Surely relator, as a stockholder in the
bank, is entitled to this privilege at this time; there
being no evidence in this record pointing to any ulterior
or improper motives on his part at this time; nor
showing that he now has cause to be personally in-
terested in anything in connection with such demand
other than the welfare of the bank; nor any showing
that such examination as the court awarded will inter-
fere or inconvenience the bank in its usual business.
A problem similar to this was reviewed at some length
in *State ex rel. Weinberg v. Pacific Brewing & Malting
Co.*, 21 Wash. 451, 58 Pac. 584, 47 L. R. A. 208, wherein,

touching the question of a stockholder's right to an examination of books and records of the corporation, it was said:

"We believe that these interests will be better protected by holding that a stockholder of a corporation has the right, at reasonable times, to inspect and examine the books and records of such corporation, so long as his purpose is to inform himself as to the manner and fidelity with which the corporate affairs are being conducted and his examination is made in the interests of the corporation. Nor will it be presumed, when such request is made, that the purpose of the inspection is other than in the interest of the corporation; and, when it is charged to be otherwise, the burden should be on the officers refusing such request or the corporation, to establish it."

This holding, it seems to us, is conclusive as against the contentions here made by counsel for the defendants, in view of the conditions now existing as shown by this record. Counsel for the defendants cite and rely largely upon our decision in *State ex rel. Beaty v. Guarantee Mfg. Co.*, 103 Wash. 151, 174 Pac. 459. It appears, however, that in that case the motive of the stockholder seeking examination of the records of the corporation was manifestly to use such information in the promotion of the interests of a rival corporation in opposition to the interests of the corporation whose records he was seeking to examine. We have no such condition here. We are of the opinion that the judgment of the trial court must be affirmed.

It is so ordered.

MAIN, C. J., TOLMAN, and PEMBERTON, JJ., concur.