[No. 32063. Department Two. August 14, 1952.]

THE STATE OF WASHINGTON, *on the Relation of Helen W. Paschall, Appellant,* v. HAROLD L. SCOTT *et al., Respondents.*[1]

*H. Joel Watkins* (of *McWalter & Copass*), for appellant.

*Elvidge & Watt,* for respondents.

HAMLEY, J.—This is a mandamus action brought by a minority stockholder and director of two corporations, to compel the officers of the corporations to make certain corporate books and records available to plaintiff or her accountants for inspection.

[1]Reported in 247 P. (2d) 543.

The corporations in question are Pascal Company and its wholly-owned subsidiary, Breatheasy Distributors, Inc. They are engaged in the manufacture and marketing of an asthma remedy. Plaintiff, Helen W. Paschall, owns one hundred shares of the six hundred fifty shares outstanding in Pascal Company. The remaining five hundred fifty shares are held by the principal defendant, Harold L. Scott, in trust for Mrs. Paschall's two minor children. Scott is also guardian of the estates of the two children. His appointment as trustee and guardian was an outgrowth of divorce proceedings between Mrs. Paschall and Dr. Benjamin S. Paschall, now deceased.

Since his appointment as trustee in 1945, Scott has had effective control of the corporations. With approval of the court, he elected himself a director and president of both corporations. The other defendants, Ford Q. Elvidge and Dale Bell, are secretary and operating manager, respectively, of the two corporations.

The two corporations have prospered under Scott's control, and dividends in the sum of twenty-six thousand dollars a year have been distributed. Nevertheless, the business has been subjected to severe competition, including a Portland, Oregon, company which is operated by a former employee of Pascal Company. Dr. Paschall himself, who, with Mrs. Paschall, was the original organizer of Pascal Company and Breatheasy Distributors, Inc., operated a competing company from 1945 until his death in 1947. Scott had considerable difficulty with Dr. Paschall, and, in an effort to bring about harmony following Dr. Paschall's death, Scott elected Mrs. Paschall to the board of directors of the two companies. Later events proved this effort to be abortive.

Scott has made annual reports to the court regarding the operation of the corporations, attached to each of which was an audit by certified public accountants. Mrs. Paschall was provided with copies of each such report and was given due notice of court hearings at which the reports were approved. In the fall of 1948, Mrs. Paschall brought a proceeding to remove Scott as trustee. After a full hearing, the court, on January 29, 1949, entered an order denying the petition

for Scott's removal, and commended him for his conduct of the business.

In 1951, Mrs. Paschall made the demand for inspection of corporate books and records which gives rise to the instant controversy. Asserting that she was greatly concerned over changes which Scott had effected in the marketing plan, plaintiff asked that her accountants be allowed to examine the books and records relating to marketing practices and sales. It was her asserted desire to have an analysis made of sales, by area and method of marketing, for the period of January 1, 1950, through June 30, 1950, as compared to the like period in 1951. While she did not desire to personally see the names and addresses of distributors and customers, her accountants would need this information in order to compile the data she sought.

Defendants had no objection to an inspection of the regular corporate books of account. Mrs. Paschall's accountants had, in fact, been given access to the regular books of account for the purpose of making a complete audit in the fall of 1948, and again in the fall of 1950. Defendants refused, however, to permit Mrs. Paschall or her accountants to see the books and records relating to marketing practices, sales, and customers. Their asserted reason for refusing access to such books and records was that Mrs. Paschall had a scheme to interfere with, harass, and sabotage the business by contacting distributors and customers, and by making information regarding the business available to competitors.

Mrs. Paschall thereupon instituted the present action, and appeals from a judgment of dismissal with prejudice.

Appellant's first assignment of error is directed against five paragraphs of the findings of fact. The findings of fact as a whole are in great detail and cover all phases of the controversy. The challenged paragraphs recite, among other things, that in 1950 appellant contacted various distributors and customers of Breatheasy Distributors, Inc., located in several eastern states; that, in May of that year, she held a meeting in Denver, Colorado, for the purpose of obtaining the participation and assistance of distributors and customers in gathering evidence and preparing a proceeding

for the removal of Scott as trustee; that she took her attorney from Seattle to Denver to assist at this meeting; that such distributors and customers declined to join in this undertaking; that also in 1950, appellant contacted and visited, in Portland, Oregon, the head of a firm which is one of the most substantial competitors of Breatheasy; that she discussed with the official of this competing firm various matters pertaining to the affairs of Pascal Company and Breatheasy; and that appellant took her Seattle attorney to Portland to confer with an attorney she had engaged in Portland, looking to the obtaining of the help and co-operation of the competitor in bringing an action to remove Scott.

These paragraphs of the findings of fact also recite that appellant's activities, referred to above, were carried on pursuant to her scheme to build up a new case for the removal of Scott as trustee; that it amounted to harassment of Scott and the business; that appellant is seeking information from the books and records in question for her own interests rather than in the best interests of the corporations; that her reasons and purposes are inimical to the best interests of the trustee and the corporations; and that there is grave danger that any information appellant might gain by such examination will be used against and to the detriment of the trustee and the business of the two corporations.

Appellant does not appear to question the portion of these findings which tell of her contact with distributors, customers, and competitors, except that she denies that she discussed the business of the corporations with the competitor. However, she does question the sufficiency of the evidence to support the findings to the effect that appellant has an improper and hostile motive in seeking to inspect the books and records, and that such inspection will be inimical to the best interests of the corporations.

A stockholder may adopt a reasonable and proper course of action for the purpose of reviewing management policies and bringing about a change in management. Such cannot be attributed to hostility against the corporation or be considered as inimical to its best interests. It is immaterial that, as an incident of such action, the personal interests of the

officers or managers of the corporation may be detrimentally affected. Examination of corporate books and records, representations to other stockholders (not practicable in this case since Scott was trustee for all other stockholders), and appeals to the courts are reasonable and proper methods which stockholders may employ in testing and contesting corporate management.

The evidence here shows, however, that appellant, whatever her initial motives may have been, did not limit herself to action of this character. Instead, she made direct contact with the distributors, customers, and competitors of the corporations. She concedes that she discussed with the distributors and customers the internal affairs and policies of the business. With respect to the Portland competitor, no such concession is made. However, we believe the court was warranted in so finding. The evidence shows that her activities in these respects have been very detrimental to the best interests of the corporations. Nor can it be doubted that she was well aware of the damage she was doing to the corporations. Yet appellant persisted in this course. The inference is therefore warranted, if not compelled, that appellant desired to produce those results.

Appellant's present motives in seeking to inspect the corporate books and records must be judged in the light of her past motives and acts, unless there is convincing evidence of a complete change of attitude on her part. The record does not contain such evidence. Despite her present assurances, the trial court was therefore justified in finding, in effect, that appellant's present purposes are hostile to the corporations, and, if consummated, will be inimical to their best interests. It is our conclusion that the findings of fact in question are not contrary to the clear preponderance of the evidence.

Appellant's second and fourth assignments of error present the question of whether, under the facts as found by the trial court, appellant has a right, which may be enforced by writ of mandate, to examine the particular books and records in question. In contending for such right, ap-

pellant relies upon her status as a stockholder and director of the two corporations.

█ The right of a stockholder to inspect corporate books and records is now governed by RCW 23.36.120 (Rem. Rev. Stat. (Sup.), § 3803-35 (4)), enacted in 1933. This statute reads as follows:

"Every shareholder shall have a right to examine, in person or by agent or attorney, at any reasonable time or times, *for any reasonable purpose*, the share register, books of account and records of the proceedings of the shareholders and directors and to make extracts therefrom." (Italics ours.)

The established facts of this case are that appellant's present purposes in seeking an examination of the books and records are hostile to the corporations and, if consummated, will be inimical to their best interests. The conclusion which necessarily follows is that her purposes are not "reasonable" within the meaning of the quoted statute.

There is nothing said in any of the decisions cited by appellant which calls for a contrary conclusion. Most of these decisions were handed down prior to the enactment of RCW 23.36.120. Several of them announce the common-law rule, consistent with the quoted statute, that the stockholder's right of inspection disappears where the corporation sustains the burden of proving that the inspection would not be in the interests of the corporation. *State ex rel. Weinberg v. Pacific Brewing and Malting Co.,* 21 Wash. 451, 58 Pac. 584, 47 L. R. A. 208; *State ex rel. Beaty v. Guarantee Mfg. Co.,* 103 Wash. 151, 174 Pac. 459; *State ex rel. Heitman v. First Bank of Wilkeson,* 125 Wash. 321, 216 Pac. 9; *State ex rel. Lee v. Goldsmith Dredging Co.,* 150 Wash. 366, 273 Pac. 196. Some of these decisions point out that the stockholder may have a more comprehensive right of inspection under a by-law providing therefor (*State ex rel. Gwinn v. Bucklin,* 83 Wash. 23, 145 Pac. 58; *State ex rel. Lee v. Goldsmith Dredging Co., supra*); or under the statute, now repealed, giving stockholders an unconditional right to examine the share register (*State ex rel. Beaty v. Guarantee Mfg. Co., supra,* discussing Rem. 1915 Code, § 3701

(later Rem. Rev. Stat., § 3827), repealed in 1939 (chap. 143, § 19, Laws of 1939)).

This court has rendered two decisions dealing with this problem since enactment of RCW 23.36.120 in 1933. Neither of them, however, construes or applies that statute. *State ex rel. Grismer v. Merger Mines Corp.*, 3 Wn. (2d) 417, 101 P. (2d) 308, was concerned with an Arizona statute, similar to our former Rem. Rev. Stat., § 3827, relating to the stockholder's right to inspect the share register. It was with reference to that particular statute, and not to the "reasonable purpose" statute now before us, that we said that statutes such as the one in Arizona "extend and supplement" the common-law rule. In *State ex rel. Wicks v. Puget Sound Savings & Loan Ass'n*, 8 Wn. (2d) 599, 113 P. (2d) 70, 134 A. L. R. 696, decided in 1941, the common-law rule was repeated (no reference being made to the quoted statute), but was held to be not applicable to shareholders in savings and loan associations.

It is therefore our view that, under the established facts of this case, and assuming, as appellant contends, that the particular books and records appellant seeks to examine are "books of account," as that term is used in the statute, appellant has no right, as a stockholder, to examine the books and records in question.

Appellant contends further, however, that, as a director of these corporations, she has an absolute and unqualified right to examine the corporate books and records.

There is no statute in this state specifying the rights of directors relative to the examination of such books and records. The following statutes, however, have a bearing upon the question:

"The business of every corporation shall be managed by a board of at least three directors . . ." RCW 23.36.010 (Rem. Supp. 1943, § 3803-31)

"Officers and directors stand in a fiduciary relation to the corporation, and must discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under

similar circumstances in like positions." RCW 23.36.080 (Rem. Rev. Stat. (Sup.), § 3803-33)

Appellant relies upon these statutes and our decision in *State ex rel. Anderson v. Frederickson,* 133 Wash. 28, 233 Pac. 291, as establishing her absolute right to examine the books and records. In the *Anderson* case, we held that directors could not be denied access to corporate books on the ground that they had not fully paid for their stock. We there said:

"Again, as trustees they must have such right of personal examination in order to perform their duties under § 3812, Rem. Comp. Stat. [P. C. § 4516], which provides that the corporate powers of a corporation shall be exercised by a board of trustees." (p. 29)

There was no contention, in the *Anderson* case, that the trustees had a purpose hostile to the corporation, or that their examination of the books and records would be inimical to its best interests. Hence, neither the quoted language nor the result reached bears upon the rights of a director where his purpose is hostile and its fulfillment would be detrimental to the corporation.

The majority rule elsewhere appears to be that a director has an absolute right to make such inspection, which right cannot be defeated by showing a hostile purpose or that the corporation will be damaged. This rule is followed in New York (*Wilkins v. M. Ascher Silk Corp.,* 207 App. Div. 168, 201 N. Y. S. 739, affirmed *per curiam* in 143 N. E. 748 (three judges dissenting)), New Jersey (*Drake v. Newton Amusement Corp.,* 123 N. J. L. 560, 9 A. (2d) 636), Pennsylvania (*Machen v. Machen & Mayer Electrical Mfg. Co.,* 237 Pa. 212, 85 Atl. 100), and West Virginia (*State ex rel. Keller v. Grymes,* 65 W. Va. 451, 64 S. E. 728). See, also, 5 Fletcher Cyclopedia Corporations 633, § 2235.

The reasoning of these cases is that a director's duty is to keep himself informed of the business of the corporation, irrespective of his motive, and that where wrongful motive is established the remedy is to remove the director from office. There is some doubt whether the Pennsylvania

courts would now adhere to that rule, in view of language to be found in the later case of *Strassburger v. Philadelphia Record Co.*, 335 Pa. 485, 6 A. (2d) 922.

Decisions in two other jurisdictions, while digested as if they adhered to the rule of absolute right, actually turn upon other points. Thus, *State ex rel. Dixon v. Missouri-Kansas Pipe Line Co.*, 42 Del. 423, 36 A. (2d) 29, goes off on a procedural issue. In *Leach v. Davy,* 199 Mich. 378, 165 N. W. 927, the court declined to rule on the question, it appearing that the relator was no longer a director.

The contrary rule that a director may be denied the right of inspection where it is shown that he has an improper motive, is followed in Connecticut. In *Heminway v. Heminway,* 58 Conn. 443, 19 Atl. 766, an officer of the corporation forcibly prevented a director from examining a corporation letter file for the purpose of benefit of a competing company. In upholding the forcible action that was taken, the court said:

"It may be admitted that a stockholder or a director in a joint stock corporation has the right at any reasonable and proper time to examine and inspect the books and papers of the corporation, whenever it is necessary to do so for the protection of his interests as a stockholder or for the performance of his duties as a director. The statement of this right implies that such examination could not be had at any other time or for any other purpose: and it clearly implies that such examination could not be rightfully had for a purpose hostile to the corporation. 'The directors or trustees of a corporation, in accepting their appointment, impliedly undertake to give the company the benefit of their best care and judgment, and to use the powers conferred upon them solely in the interest of the corporation. They have no right under any circumstances to use their official positions for the benefit of any one except the corporation. It is a general rule that the power conferred upon an agent must be exercised to advance the the interest of the principal and for no other purpose.' 1 Morawetz on Corporations, § 517. See also *Alford v. Miller,* 32 Conn., 543; *Hoyle v. Plattsburgh & Montreal R. R. Co.,* 54 N. York, 314."

In *Stone v. Kellogg,* 165 Ill. 192, 46 N. E. 222, the court held that there was a failure of proof on the question of hostile motive. It was intimated, however, that had improper motive been established, the director could not expect to obtain the aid of the court in gaining access to corporate records. See, also, Ballantine on Corporations 383, § 165, where the view is expressed that inspection should be denied to a director "when necessary to prevent abuse by him or his representative."

█ We are in accord with the rule sanctioned by the authorities last referred to, that a director may be denied the right to examine corporate records where it is shown that he has a hostile or improper motive.

The right of a director to examine corporate records at all is based upon the principle that he must be able to do this in order to perform his corporate duties. His corporate duties require him to preserve and protect the corporation and to do nothing which will damage or destroy it. He stands in a fiduciary relation to the corporation, and is commanded by statute to discharge his duties in good faith. His duty is to not entertain hostile and improper motives concerning his corporation. If he does entertain such motives, his duty is to refrain from using his position as a means of carrying his motives into execution. Indeed, the duty of such a director is to resign forthwith.

Hence, when a director, driven by hostile and improper motives, seeks to examine corporate books and records, he cannot do so under a claim of duty. On the contrary, his purposes and action are completely inconsistent with such duty. The basis of the right which a director has to examine corporate records—the performance of corporate duties— is then wholly lacking, and thus the right itself no longer exists.

Applying this reasoning to the instant case, appellant's right, as a director, to examine corporate books and records disappeared when it was determined that she was proceeding pursuant to a hostile and improper purpose. The trial court did not err in so holding.

Appellant's third assignment of error is that the trial court erred in denying appellant's motion to reopen the cause for submission of additional evidence. We have examined the record and are satisfied that the trial court did not abuse its discretion in this regard.

Appellant's final assignment of error, relating to the denial of her motion for a new trial, is not argued in her brief.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.