**DYNAMICS CORPORATION OF AMERICA, Plaintiff-Appellant,**

v.

**CTS CORPORATION, Defendant-Appellee.**

**No. 3–584A122.**

Court of Appeals of Indiana, Third District.

July 9, 1985.

---

Richard J. Darko, Bradley W. Skolnik, Bayh, Tabbert & Capehart, Indianapolis, and Gary Boyn, Warrick Weaver & Boyn, Elkhart, for plaintiff-appellant.

Richard E. Deer, Stanley C. Fickle, Barnes & Thornburg, Indianapolis and John D. Ulmer, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for defendant-appellee.

GARRARD, Judge.

Appellant, Dynamics Corporation of America (DCA) brought this action in mandamus against CTS Corporation (CTS) to compel disclosure of certain corporate information pursuant to IC 23–1–2–14.[1] The claim was tried to the court and after entering detailed special findings the court denied relief on alternative theories.

Among its findings and conclusions thereon the court determined that under IC 23–1–2–14 a stockholder may exercise inspection rights only for proper purposes and that CTS was entitled to judgment because it had "proven by a preponderance of the evidence that DCA did not have a proper purpose in requesting inspection." We find that this conclusion is sustained by the evidence and is dispositive of the appeal, since it renders the other grounds found by the court to be merely surplusage.[2]

Of course, on appeal it is not our province to reweigh the evidence or redetermine questions of credibility. Instead we will consider only the evidence which supports the judgment and the reasonable inferences supporting the judgment that may be drawn therefrom. *Mishawaka Brass Mfg. Inc. v. Milwaukee Valve Co.* (1983), Ind. App., 444 N.E.2d 855.

The information requested by DCA was essentially as follows: (a) all records and minutes of the 1981 CTS annual meeting of shareholders; (b) books of account reflecting all expenditures for research and development since January 1978; (c) the books of account reflecting all legal fees paid or incurred in connection with claims and suits asserted by CTS against DCA; (d) all fees paid or owed to Goldman, Sachs & Company since August 11, 1980; and (e) the minutes of all regular and special meetings of the Board of Directors of CTS since August 11, 1980.[3]

It should be noted that both the statute and the common law in Indiana

1. "Each corporation shall keep correct and complete books of account and minutes of the proceedings of its shareholders and directors; and shall keep at its principal officer [sic] an original or a duplicate stock register or transfer book, or, in case such corporation employs a stock registrar or transfer agent in this or any other state, a complete and accurate shareholders' list giving the names and addresses of all shareholders and the number and classes of shares held by each. All such books, records and lists of a corporation shall be open to inspection and examination during the usual business hours for all proper purposes by every shareholder of the corporation, or his duly authorized agent or attorney. Upon the written request of any shareholder of a corporation, the corporation shall mail to such shareholder its most recent annual financial statements showing in reasonable detail its assets and liabilities and the results of its operations."

2. Two procedural assertions by DCA do bear mention. Prior to trial the court made a preliminary ruling that DCA would bear the burden of proving it had a proper purpose in seeking inspection. In addition an issue presented and found by the court determined that DCA, as a shareholder, was required under the statute to state its purposes in seeking inspection before it could maintain the action. While we are inclined to the view that the common law rule applied in *Charles Hegewald Co. v. State* (1925), 196 Ind. 600, 149 N.E. 170 supports both rulings, the court's findings which clearly imposed the burden upon CTS rendered any error harmless and preclude us from deciding the questions. *See also S.F. Bowser & Co. v. State* (1922), 192 Ind. 462, 137 N.E. 57 holding that mandamus would not lie unless and until the corporation knew or was given reasonable assurance that the party making a request was really a stockholder, and *People ex rel. Miles v. Bowen Industries, Inc.* (1945), 327 Ill.App. 362, 64 N.E.2d 213.

3. We do not suggest that all this information was discoverable under the statute. The trial court determined that some was not.

restrict shareholder entitlement to corporate information to some proper purpose on the part of the shareholder. *See Charles Hegewald Co. v. State* (1925), 196 Ind. 600, 149 N.E. 170 for the common law rule.

The following is a summary of the evidence favorable to the findings and judgment. DCA is a New York corporation with its principal place of business in Greenwich, Connecticut. CTS is an Indiana corporation with its principal place of business in Elkhart, Indiana.

In 1980 DCA began to acquire shares of CTS stock. It subsequently filed a lawsuit against CTS in the Federal District Court in Indianapolis. On November 5, 1980 CTS filed counterclaims against DCA in the federal lawsuit seeking to enjoin DCA's acquisition of CTS stock as violative of the federal securities and antitrust laws. CTS counterclaims against DCA are pending in the federal court, which has denied DCA's motions to dismiss and for summary judgment.

Beginning December 5, 1980, acting through its President, Andrew Lozyniak, and Vice-President and General Counsel, Edward Mooney, DCA began a campaign demanding that CTS' officers and directors cause CTS to dismiss its counterclaims against DCA in the pending federal lawsuit. In the course of this campaign, DCA repeatedly demanded that CTS hire additional lawyers to advise its Board of Directors regarding CTS counterclaims in the federal lawsuit. This campaign included threats to sue CTS' management for alleged "waste of corporate assets" if they did not cause the counterclaims against DCA to be dismissed.

A few months after this campaign began, CTS received a letter from DCA's local counsel enclosing a letter authored by Mr. Mooney. This letter demanded inspection by DCA of numerous CTS records including its books of account reflecting CTS legal fees incurred in the pending litigation between the two and CTS research and development expenditures for the past several years. DCA's demand letter stated no purpose for this inspection.

DCA's letters were delivered to CTS' General Counsel, James Taylor, about 3:30 p.m. on Friday, May 22, 1981. The following week Taylor contacted Boyne and advised him that Taylor was leaving on vacation May 29 and would not return until the week of June 8 and that he would expect to respond to Mooney's demand sometime during the week of June 8. Later that same day in a return telephone call Boyne told Taylor that DCA would accept the delay only if Taylor immediately agreed to produce all the requested documents upon his return from vacation. Boyne told Taylor that unless CTS immediately agreed to that demand, DCA would file suit. Taylor responded that CTS was neither refusing nor agreeing to the demand but that it needed additional time for its counsel to review and consider the demand and reiterated that he would give DCA a decision during the week of June 8. DCA responded by filing this mandamus action on June 4, 1981.

Concerning the minutes of the 1981 annual meeting, the record discloses that copies of those minutes were offered to all shareholders at the 1982 annual meeting and that DCA's President and General Counsel were in attendance at that meeting. In addition it appeared that minutes of this meeting had already been produced to DCA as part of discovery in the federal lawsuit before the trial in this case. In addition the record shows Mr. Mooney's testimony that DCA wanted the minutes to see how they treated the CTS directors' response to a question whether CTS management would "band together" to oppose a corporate takeover by DCA.

With respect to the second item of DCA's demand concerning research and development expenditures, the evidence showed that in 1980 CTS determined to change its accounting classification of these expenditures for financial recording purposes and

to employ a more conservative definition of such expenditures. CTS' outside independent auditors reviewed this reclassification and certified without qualification the public financial statements for the years in question. The evidence showed that DCA had questioned CTS management at the 1981 shareholders meeting about this reclassification of research and development expenditures and that after the meeting DCA's President Lozyniak praised the manner in which CTS had answered the questions at the meeting. The first indication to Mr. Hostetler that DCA was not satisfied with his explanation concerning the research and development reclassification was his receipt of a complaining letter sent to the Securities and Exchange Commission by DCA's President Lozyniak dated May 15, 1981, the same day that DCA's General Counsel authored the inspection demand which prompted this lawsuit. DCA has given no explanation to CTS for withdrawing its expressed approval of Mr. Hostetler's response at the annual meeting. In addition it was established that CTS books of account do not contain a separate account for research and development expenditures. That information is contained in work papers prepared by CTS accountants and the work papers contain the names of CTS employees who are engaged in research and development, the salaries of each, and the activities upon which CTS is expending its research and development efforts. This information is considered confidential and is protected by CTS. It additionally appears that CTS through its CTS Knights subsidiary and DCA through its Reeves Hoffman Division are direct and substantial competitors in markets for sale of quartz crystals and electronic quartz crystal products and that DCA is also a potential competitor of CTS in other lines of business. Indeed DCA has previously hired away from CTS Knights one of its key engineering employees for the Reeves Hoffman Division.

The third item of the demand seeking the attorney fees incurred by CTS in its litigation with DCA is facially linked with DCA's demands that CTS dismiss those claims or suffer charges of wasting corporate assets.

With respect to the last two categories, the evidence showed that Goldman, Sachs and Company was retained for litigation advice, including the DCA suit in federal court, and the minutes of directors' meetings reflected legal advice received by CTA regarding the federal litigation with DCA and tentative CTS business plans.

There was a reasonable inference available to the trial court that DCA was not seeking the requested information for a "proper purpose" but sought it instead to assist DCA in its non-derivative litigation and competitive goals against CTS.

Considering such requests the court in *Holdsworth v. Goodall-Sanford, Inc.* (1947), 143 Me. 56, 55 A.2d 130, 133 observed:

> "[T]he power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation ... that the court ought to exercise the power with the greatest care, and only when a case is presented which indicates, not only a bona fide desire to safeguard the interests of all stockholders, but a probability that the interests of all will be served by the proposed investigation."

Thus, the general rule applied by the courts reviewing inspection statutes has been that the primary purpose of the inspection must not be one that is adverse to the best interests of the corporation. *See, e.g., C.M. & M. Group, Inc. v. Carroll* (Dec.1982), 453 A.2d 788, 792; *A & K Railroad Materials v. Green Bay & W.R.R. Co.* (E.D.Wis.1977), 437 F.Supp. 636, 645; *National Consumers Union v. National Tea Co.* (1973), 14 Ill.App.3d 186, 302 N.E.2d 118, 121; *Hagy v. Premier Mfg. Corp.* (1961), 404 Pa. 330, 172 A.2d 283, 285; *State ex rel. Paschall v. Scott* (1952), 41 Wash.2d 71, 247 P.2d 543, 545.

The findings sustain the judgment and are not clearly contrary to logic and the circumstances before the court. Therefore no reversible error was committed.

Judgment affirmed.

STATON, P.J., and HOFFMAN, J., concur.