[No. 3172. Decided September 27, 1899.]

THE STATE OF WASHINGTON *on the Relation of M. Weinberg, Respondent*, v. PACIFIC BREWING AND MALTING COMPANY *et al., Appellants.*

MANDAMUS—PROCEDURE—PARTY PLAINTIFF—PROSECUTION IN NAME OF STATE.

Although the application for a writ of mandamus is made in the interest of a private person, it is proper practice to bring the proceeding in the name of the state, on the relation of the party beneficially interested.

CORPORATIONS—INSPECTION OF RECORDS—RIGHTS OF STOCKHOLDER.

A stockholder of a corporation has the right, at reasonable times, to inspect and examine the books and records of such corporation, so long as his purpose is to inform himself, in the interests of the corporation, as to the manner and fidelity with which the corporate affairs are being conducted; and, upon a refusal to permit such inspection, may enforce the right by mandamus proceedings.

SAME—PRESUMPTIONS.

The presumption, when a stockholder applies for inspection of the corporate books and accounts, is that the inspection is sought in the interests of the corporation; and, when the refusal is based on the ground that the inspection is sought for purposes antagonistic to the corporation, the burden is upon the officers refusing inspection to establish that the stockholder is not proceeding in good faith.

SAME—GROUNDS OF REFUSAL.

Where the refusal to permit a stockholder to inspect the books and accounts of the corporation was based on the ground that the stockholder had no right of inspection at any time or for any purpose, it is unnecessary that the petition for mandamus to compel compliance should affirmatively show the demand for inspection was made during office hours, or at the place of business of the corporation, or that the person making the demand was the agent of respondent or had any lawful right to represent her in the transaction.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge. Affirmed.

*Campbell & Powell,* for appellants.
*Pritchard & Haight,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The Pacific Brewing & Malting Company is a corporation organized under the laws of, and doing business within, the state of Washington, and William Virges is the treasurer of, and is entitled to and has possession and custody of the books of account of, said corporation. The respondent is a stockholder of the Pacific Brewing & Malting Company, owning 803 of the 5,000

shares in which the capital stock of the corporation is divided, the par value of each share being $100. On August 10, 1898, the respondent applied to the court below for a writ of mandamus to compel the appellants to permit her to inspect the account books of the corporation. As a cause for the issuance of the writ, she alleged:

" That relator as such stockholder has for some time been desirous of learning the true condition of the affairs of said company and of the management of its business and of the value and nature of relator's interest and property therein as such stockholder, and of the manner and skill and fidelity with which relator's interests as stockholder as aforesaid are and have been attended to and protected, and to that end has sought to inspect and examine, at proper and convenient times and without interruption or embarrassment to said company, or to the management, or transaction of the business thereof, the books of account of said corporation, and has requested and demanded of said respondents permission, access and opportunity to so examine said books of account, but said respondents and each of them have always refused and still refuse relator such permission, access and opportunity."

The lower court caused an alternative writ to issue directing the appellants to permit the respondent to inspect the books, or show cause, on a date named, why a peremptory writ commanding them to do so should not issue. On the return day the appellants appeared and moved the court to quash the proceedings, for reasons which are hereafter noticed; and, on their motion being overruled, demurred, reciting the grounds contained in their motion, and the further ground that the alternative writ of mandate, and the affidavit on which it was based, did not state facts sufficient to constitute a cause of action, or to entitle the court to issue the writ, and that the respondent had a plain, speedy and adequate remedy in the ordinary course of law. The demurrer was also overruled; whereupon the appellants took issue upon the facts alleged, upon which a

trial was had before the court without a jury, resulting in a judgment in favor of the respondent, and an order that a peremptory writ of mandate issue. From the judgment, and the several orders and the rulings of the court, this appeal is taken.

1. The motion to quash and dismiss is based on the ground that the proceeding is not prosecuted in the name of the real party in interest, and is wrongly entitled. The contention is that in all special proceedings, where the state has no direct interest, it cannot be made a party, and its name should not be used in the title of such proceedings; that the proper way to entitle such a cause is in the name of the interested party as plaintiff and the adverse party as defendant, after the manner required in an ordinary civil action. In support of this, the appellants cite subd. 1 and 2 of § 4753, and §§ 4824, 5738 and 5775 of Ballinger's Code. Conceding the construction put upon the statute by the appellants to be the proper one, the result contended for by them would not necessarily follow. The court will not in the first instance, on its attention being called to this character of defect, quash the writ and dismiss the proceeding, but will first grant the applicant an opportunity to amend by striking out the name of the unnecessary party and inserting the name of the party beneficially interested in the writ, and will only dismiss when its order in this respect is disobeyed. But treating the motion to quash as, in effect, a motion to require the applicant to amend, should it be allowed? At common law, as formerly adjudicated in the courts of England and in some of the courts of this country, the writ of mandamus was regarded as purely a prerogative writ, issuable not of right, but only at the pleasure of the sovereign or state, and hence only in his or its name and as an attribute of sovereignty. Now, in this country, it is generally, if not universally, regarded as a writ of right, issuable as of

course upon proper cause shown, and it would seem there could be no very satisfactory reason given why the proceedings should not be conducted as in an ordinary civil action for the protection of private rights; that is, in the name of the actual parties in interest as plaintiff and defendant, without introducing the state as the prosecutor, unless issued in behalf of the state. Yet it is evident that the statute regulating the procedure did not contemplate this change. It still preserves the ancient method of suing out the writ, prescribing that it "must be issued upon affidavit on the application of the party beneficially interested." Neither does the statute define the writ, or prescribe for it a form of title, nor declare in whose name it shall be prosecuted; and it is evident that the statute, when it speaks of the writ, must refer to the writ as it was known and defined at common law. The weight of authority, also, seems to be against the appellants. As sustaining their contention, our attention is called to the cases of *People v. Pacheco,* 29 Cal. 210, and *State ex rel. Railroad Co. v. Commissioners of Jefferson County,* 11 Kan. 66. These cases, with others that might be cited from those states, hold with them. In California, however, in the subsequent case of *People v. San Francisco,* 36 Cal. 595, it was said, speaking of this contention:

" We are not inclined to extend the principles adjudicated in *People v. Pacheco,* on this point, beyond the facts of that case."

It would seem, too, that in applying the principles announced in the cases cited to subsequent cases the courts of those states have not been entirely consistent. If it be error to join the state as prosecutor in a case where only a private prosecutor is interested, it ought to be equally so to join a private prosecutor with the state where the writ is prosecuted on behalf of the whole people—where the state alone is interested—yet this is constantly being done in

both California and Kansas.   Turning to the decisions from other states having statutes similar to, and equally liberal with, our own, the method of procedure adopted by the respondent in this instance is generally approved.   In *State ex rel. Levy v. Spicer,* 36 Neb. 477 (54 N. W. 852), it is said:

" The right of the relator to bring an action by mandamus in the name of the state has been recognized from the earliest period of our history as a state, and may be regarded as a settled rule which, if changed, it should be done by the legislature."

In *State ex rel. Dakota Hail Ass'n v. Carey,* 2 N. Dak. 36 (49 N. W. 164), a case where the attorney general appeared and moved to dismiss because the proceeding was not prosecuted in the name of the real party in interest, the court, citing the statute of that state, which declared that "every action must be prosecuted in the name of the real party in interest," held that this section applied only to remedies formerly had by action at law or by suit in equity, and was not intended to include special proceedings, such as mandamus, etc., saying:

" We can see no good likely to result from changing the established practice in this respect, and, on the other hand, a change not based on a new and well-considered statute would, in our opinion, tend to much confusion in the practice, and thereby greatly impair the usefulness of the writ."

In *State ex rel. Huston v. Commissioners of Perry County,* 5 Ohio St. 497, it is said:

" The question as to the prosecution of the writ in the name of the state, is purely technical; and if this mode of prosecution be informal under the code, leave would of course be given to amend.   But we incline to think this mode of proceeding in mandamus proper.   The writ is, from its very nature and definition, 'a command issuing in the name of the sovereign authority.'   Bouvier's Dict.

Blackstone says, 'It is a command issuing in the king's name.' In the United States it has always been issued in the name of the sovereignty by which it has been authorized. We apprehend the code does not contemplate an essential change in the character of the writ or the proceedings under it. From the nature of the remedy, this suit, then, is properly prosecuted in the name of the state." *Collett v. Allison*, 1 Okl. 42 (25 Pac. 516); *State ex rel. Curtis v. McCullough*, 3 Nev. 202; *Chumasero v. Potts*, 2 Mont. 242; *Territory ex rel. Tanner v. Potts*, 3 Mont. 364; *Ohio ex rel. Parrott v. Board of Public Works*, 36 Ohio St. 409; *Whitesides v. Stuart*, 91 Tenn. 710 (20 S. W. 245).

In all the numerous applications for this writ made before this court, and before the superior courts and brought here on appeal, the proceedings have been, with perhaps one exception, prosecuted in the name of the state on the relation of the party beneficially interested, and, as is stated by the counsel for appellants in their brief, "it is believed that this is the first time that the question of practice presented by the case at bar has been submitted to this court for its decision." It is proper to add that this practically uniform construction of the statutes relating to this subject by the learned and distinguished counsel who appear before the bar of this court is entitled to great weight in determining what is the proper practice, and that when a practice is once established radical innovations are to be avoided, especially where no real evil is corrected by the change. We conclude, therefore, that this proceeding is properly brought in the name of the state, on the relation of the party beneficially interested.

2. Another question is, has the respondent shown facts sufficient to authorize the court to direct that a writ of mandamus issue? The stockholders of a corporation have at common law, for a proper purpose, and at seasonable times, a right to inspect any or all books and records of the corporation. While this right is universally recog-

nized, the courts disagree as to what is a proper purpose, or, rather, as to what facts are sufficient to warrant the court in directing by mandamus permission to inspect, where the stockholder has been refused such by the officers of the corporation. In the early case of *Rex v. Master and Wardens of the Merchant Tailors' Company,* 2 Barn. & Adol. 115, this question received consideration by the court of the King's Bench in England, on which the sev-- eral judges expressed opinions. The rule to show cause why a writ of mandamus should not issue was obtained upon the affidavits of certain liverymen and freemen of the company, who alleged, among other things, that the attention of the deponents had for a considerable time been called to the affairs of the company by reports, which they believed to be well founded, that the revenues of the company were misemployed through malpractices on the part of those members who had the management of the company's affairs; that the fine for admitting freemen to the livery had been recently twice raised, without any corresponding increase, as deponents were informed and believed, in the pensions and charitable disbursements of the company; that a lavish expense had taken place, unsanctioned by the majority of the members of the company; that a clerk of the company had, as deponents had heard and believed, misappropriated funds of the company to a large amount, but that no accounts or information had been laid before the freemen by which they could learn the amount of such defalcation, nor could they ascertain, unless allowed to look at their charters, by-laws, books, muniments, and documents, whether such their common funds were properly applied and accounted for or not; that they had no other wish in desiring the inspection of the books than to see, on behalf of a body of the members, by whom they were authorized, how their joint funds were disbursed, and that the legal rights and privileges of the

members were enjoyed agreeably to their charters.   On motion to discharge the rule, the judges were unanimous in the opinion that no sufficient cause was shown to warrant the court in issuing the writ.   It was held that before the writ could issue some distinct cause or purpose affecting the applicant personally must be shown, and that a desire to examine the books for the purpose of ascertaining whether the company's affairs were being properly managed was not sufficient cause.   Passing upon the motion, LITTLEDALE, J., said:

" The master and wardens, who have the care of the documents in question, are bound to produce them if a proper occasion is made out, in a matter affecting the members of the corporation.   But I think the members have no right on speculative grounds to call for an examination of the books and muniments, in order to see if by possibility the company's affairs may be better administered than they think they are at present.   If they have any complaint to make, some suit should be instituted, some definite matter charged; and then the question will arise whether or not the court will grant a mandamus."

TAUNTON, J., said:

" There is no express rule that to warrant an application to inspect corporation documents there must actually have been a suit instituted; but it is necessary that there should be some particular matter in dispute, between members, or between the corporation and individuals in it; there must be some controversy, some specific purpose in respect of which the examination becomes necessary."

PATTESON, J., said:

" I am far from saying that there may not be particular instances in which a corporator may apply for a mandamus to inspect documents, or some of them, of the kind here mentioned, if he can show a specific ground of application, and that the granting of it is necessary to prevent his suffering injury, or to enable him to perform his duties. But he must state a definite object; and here that is not done."

The principle announced in this case has been followed by some of the courts of this country, in so far, at least, as to hold that the mere benefit of knowledge to be derived from the books as to the proper conduct of the business is not a sufficient cause for the issuance of the writ to compel the corporate officer to grant an inspection, but that something more must be shown; as that a controversy is depending, or that some question or interest is involved with reference to which the contents of the books may be applicable.   Of this class of cases, the following are illustrative:  *People ex rel. Hatch v. Lake Shore & M. S. R. R. Co.,* 11 Hun, 1; *People v. Walker,* 9 Mich. 328; *Commonwealth v. Phoenix Iron Co.,* 105 Pa. St. 111 (51 Am. Rep. 184); *Lyon v. American Screw Co.,* 16 R. I. 472 (17 Atl. 61).

The injustice of the rule, when applied in all its strictness, has been so keenly felt that in England, and in many of the United States, the right of inspection of corporate books is now guaranteed to the stockholders by statute, and such statutes seem to be generally held not to be innovations in, but declaratory of, the common law.   The tendency of the modern decisions, also, is towards holding that a stockholder, as such, has a right to inspect the books and other documents of the corporation, where his sole object is to inform himself as to the manner in which the business of the corporation is being conducted.   In *State ex rel. Doyle v. Laughlin,* 53 Mo. App. 542, the facts were that the relator was a stockholder in a banking corporation, and as such stockholder requested of the directors and officers of the bank the privilege of examining the books of the bank for the sole purpose of acquainting himself with the condition of its affairs, and how the bank was being managed.   On the request being refused, he brought mandamus to compel the officers to allow such inspection. The court said:

" The right of a stockholder to examine and inspect all
the books and records of a corporation at all seasonable
times and to be thereby informed of the condition of the
corporation and its property is a common-law right.   .   .   .
It is quite obvious therefore that the relator has a clear
right to examine the books of the bank in question.   And
though the relator in his application for the alternative
writ took the precaution to state the purposes for which
he sought to exercise the right of inspection, this upon
principle we think was unnecessary.   If the right of
inspection of the corporate books exists, whether under
the statute or at common law, the purpose of the exercise
of the right is immaterial.   *State ex rel. v. Sportsman's
Park*, 29 Mo. App. [326] *supra*.   Because the right may
be made the subject of abuse does not prove that it does
not exist.   The manner in which it may be exercised might
well be regulated by the by-laws of the corporation.   Such
regulations would, of course, have to be reasonable.   The
right could not be regulated out of existence."

In *State ex rel. Bourdette v. New Orleans Gaslight Co.,*
49 La. An. 1556 (22 South. 815), the court said:

" No better way of safeguarding the interests of the
public can, perhaps, be devised, or one that may be so
easily and readily applied, as the right to the frequent,
sudden and speedy examination of the books of corpora-
tions in the stock or shares of which investors and specu-
lators are invited to trade.   The recognition of this fact
attests alike the wisdom and purpose of the framers of the
constitution.   The question here presented was virtually
passed upon in *Legendre v. Brewing Association,* 45 La.
An. 669 (12 South. 837), and adversely to the pretensions
of defendant corporation herein.   See also *State ex rel.
Martin v. Bienville Oil Works Co.,* 28 La. An. 204; *Cock-
burn v. Union Bank,* 13 La. An. 289.   In the United
States the prevailing doctrine appears to be that the indi-
vidual shareholders in a corporation have the same right
as the members of an ordinary partnership to examine
their company's books, although they have no power to
interfere with the management.   (Morawetz, Priv. Corp.,
§ 473.)   This doctrine obtains with all the more force in

462 STATE, EX REL., v. PACIFIC BREWING, ETC., CO.

Opinion of the Court — FULLERTON, J. [21 Wash.

this state by reason of its recognition in the constitution itself."

In *Lewis v. Brainerd,* 53 Vt. 519, an action brought under a statute to recover a penalty fixed by the statute for refusing to permit a stockholder to examine the books, the court, on affirming a judgment recovered for such refusal, said:

" The shareholders in a corporation hold the franchise, and are the owners of the corporate property; and as such owners they have the right, at common law, to examine and inspect all the books and records of the corporation, at all seasonable times; and to be, thereby, informed of the condition of the corporation and its property. Our statute provides the method of securing and enforcing such rights. The statute is remedial; it was enacted to secure rights and suppress fraud and wrong; and should be so construed and enforced as effectually to carry out the purpose of the legislature, and remedy the evil sought to be prevented."

In *Huylar v. Cragin Cattle Co.,* 40 N. J. Eq. 392 (2 Atl. 274), it is said:

" Stockholders are entitled to inspect the books of the company for proper purposes at proper times. . . . And they are entitled to such inspection, though their only object is to ascertain whether their affairs have been properly conducted by the directors or managers. Such a right is necessary to their protection. To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant. The books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders."

See, further, *Cockburn v. Union Bank,* 13 La. An. 289; *State ex rel. Martin v. Bienville Oil Works Co.,* 28 La. An. 204; *Ranger v. Champion Cotton-Press Co.,* 51 Fed.

61, 62; *Deaderick v. Wilson,* 8 Baxt. 108; Boone, Banking, § 235; Cook, Stock & Stockholders (3d ed.), § 511; Thompson, Corporations, § 4406 *et seq.*

In § 4418, the author in the last work cited quotes from the English cases announcing the rule that the right to inspect the books of a corporation will not be enforced unless there is a defined, distinct dispute, and adds:

"It should be carefully added, however, that this theory has gained no considerable footing in America, nor is it based upon any foundation of sense.  Subject to the convenience of the others, or of the common agency which acts for all, it is the right of every proprietor to know how the business in which he has embarked his money is being carried on, whether there is any dispute about it or not. Nor can this principle have any application where the right is given by statute."

In § 4407 the same author says:

"In corporate management, or mismanagement, no more frequent or more aggravated species of outrage exists than the refusal of those in possession of the corporate books to disclose to the stockholders the written evidences of their stewardship; and in many cases nothing short of severe pecuniary forfeitures, followed by imprisonment as for crime, will afford an adequate protection to minority stockholders."

Corporations, owing to the ease with which they can be formed under the liberal provisions of the statute and, affording as they do a limited liability for investors, have become a favorite means for the combination of capital, and are now engaged in almost every variety and character of business.  In fact, they have largely superseded partnerships.  Not having behind them the personal responsibility and fortunes of the promoters, or that of those who may have invested in their capital stock, the interests of the public at large require, and especially that part of the public dealing with them, that the courts adopt the rule

which will most largely conduce to honesty in their management. We believe that these interests will be better protected by holding that a stockholder of a corporation has the right, at reasonable times, to inspect and examine the books and records of such corporation, so long as his purpose is to inform himself as to the manner and fidelity with which the corporate affairs are being conducted and his examination is made in the interests of the corporation. Nor will it be presumed, when such request is made, that the purpose of the inspection is other than in the interest of the corporation; and, when it is charged to be otherwise, the burden should be on the officers refusing such request, or the corporation, to establish it. The argument that, under this rule, the managers of a rival concern may acquire stock in the corporation and use the privilege for the purpose of benefiting the rival concern, to the detriment of the corporation, is not more forceful than the other, that, under the restricted rule, a combination can be made by persons holding the majority of the stock, by which the corporation is managed for their own interests, to the exclusion and detriment of the minority holders and injury to the public dealing with it.

3.   It is contended that the writ should have been refused because it is not shown that the demand for an inspection was made during business hours, or at the place of business of the corporation, or that the person making the demand was the agent of the respondent, or had any lawful right to represent her in the transaction. These objections would come with more force had the refusal to permit an inspection on the part of the officer in charge of the books been based upon some one, or all, of these grounds. But the refusal was made upon the broad ground that the respondent, as such shareholder, had no right to inspect the books of the company at any time or for any purpose, and the main dispute in the court below seems to

have been as to the existence of this right. The evidence, also, upon these points, is contradictory, and, as the court found the facts in favor of the respondent, we do not feel disposed to disturb its findings.

The judgment is affirmed.

GORDON, C. J., and REAVIS and DUNBAR, JJ., concur.