IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JAMES ROBINSON and MICHAEL MATTINGLY, | ) ) ) | No. 80095-7-I |
| Petitioners, | ) ) | DIVISION ONE |
| SCOTT SMITH, | ) ) ) | PUBLISHED OPINION |
| Appellant, | ) ) | |
| v. | ) ) | |
| AMERICAN LEGION DEPARTMENT OF WASHINGTON, INC., and WAYNE ELSTON, Commander, | ) ) ) ) | |
| Respondents. | ) ) ) | FILED: November 25, 2019 |

SMITH, J. — Scott Smith is a member of the American Legion Department of Washington Inc. (ALWA). In 2017, Smith and two other ALWA members, who were concerned about potential financial mismanagement at ALWA, obtained an order directing ALWA to produce certain corporate records. Smith appeals the trial court's denial of his motion for an award of attorney fees under RCW 23B.16.040(3), which provides that if a court orders inspection and copying of corporate records demanded by a shareholder, it must also order the corporation to pay the shareholder's attorney fees incurred to obtain the order "unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." Because substantial evidence supports the trial court's

finding that ALWA refused inspection of certain corporate records in good faith as contemplated by the statute, we affirm.

FACTS

ALWA is a Washington corporation originally incorporated in 1919 under sections 3733 and 3734 of Remington's 1915 Code. In June 2017, Smith and two other ALWA members, James Robinson and Michael Mattingly (collectively petitioners), acting pro se, filed a complaint in Thurston County Superior Court against ALWA and its commander, Wayne Elston.[1] The complaint alleged, among other things, that in February 2017, Elston offered to appoint Smith as chair of ALWA's audit commission beginning in July 2017. The complaint also alleged that Smith accepted the offer and that during a March 2017 meeting with ALWA's financial officer, adjutant,[2] and other staff, Smith "cited several irregularities and said that several of [ALWA]'s practices did not comport with Generally Accepted Accounting Principles." The complaint alleged that Smith "said that he would need additional information and would issue a report" and that Smith "sent a letter to Respondent Elston and all Members of [ALWA]'s Board of Directors, stating inter alia, he was recommending a comprehensive audit, salary comparison studies, and revising budgeting procedures." The complaint also alleged that Elston subsequently rescinded Smith's appointment as chair of ALWA's audit commission, ordered Smith to stop his "'interference'"

---

[1] According to ALWA's original articles of incorporation, the "Department Commander" is ALWA's "presiding officer and chief executive."

[2] According to ALWA's original articles of incorporation, the "Adjutant-Finance Officer . . . shall have charge of all records and funds of [the] corporation and shall perform the general duties of a secretary-treasurer of [the] corporation."

with ALWA's business, and threatened revocation of the charter of American Legion Post 67, the post to which Smith belonged.

In their complaint, the petitioners requested that ALWA and Elston appear before the court and show cause as to why an order of mandamus should not issue directing that ALWA's "books and records be open for inspection in accordance with RCW §§ 23B.16.040, 23B.16.200, and 24.06.160." They also filed a motion to show cause, and the superior court entered an ex parte order to show cause.

On June 28, 2017, ALWA and Elston responded to the trial court's show cause order. They argued, among other things, that RCW 23B.16.040, which authorizes shareholders to apply for a court order permitting inspection and copying of certain corporate records, did not apply to ALWA because ALWA is regulated under the Washington Nonprofit Corporation Act (WNCA), chapter 24.03 RCW, not the Washington Business Corporation Act (WBCA), Title 23B RCW. In support of this argument, ALWA provided copies of ALWA's corporate registration detail from the Washington Secretary of State's website showing that ALWA was registered as a public benefit corporation and as a charity. ALWA also provided a copy of its 2016 annual report listing it as a nonprofit corporation. Additionally, Dale Davis, ALWA's adjutant, declared that in 2013, he signed and filed articles of amendment for ALWA "specifically using the form provided by the Washington Secretary of State's Office for nonprofit corporations regulated under chapter 24.03 RCW." The petitioners contested this declaration by submitting a declaration from Paul Whitfield, an ALWA member and former member of its

3

executive committee, attaching meeting minutes from 2013 purporting to show that no approval was given to amend ALWA's articles as described in Davis's declaration.

Additionally, relying again on Davis's declaration, ALWA and Elston asserted that at the March 2017 meeting with Smith, ALWA provided Smith with copies of all financial reports and records that he was requesting at that time. Smith contested this assertion in a reply declaration, stating, "Do not concur that I was provided all financial reports and records I requested up to and through that meeting."

The trial court held a show cause hearing on June 30, 2017. No report of proceedings was provided for that hearing, but based on the court's comments at a later hearing, it appears that at the June 30 hearing, the court "strongly encouraged" the parties to attempt to come to an agreement regarding the petitioners' records requests and "not to simply re-note this quickly." In the meantime, on June 29, 2017, Smith delivered to ALWA's counsel, Trevor Zandell, a list of corporate records that Smith requested to inspect (the Smith Records Request). The Smith Records Request listed, among other things, a variety of accounting records and reports for multiple fiscal years, including employee timesheets and vacation and sick leave records, employee travel and expense vouchers, bank statements, and cancelled checks. It also listed a variety of corporate records for multiple fiscal years and requested that ALWA provide all of the same records for American Legion Post 110.

Shortly after the court's June 30 hearing, on July 3, 2017, attorney JoAnne

4

Comins Rick appeared on behalf of Smith (but not Robinson or Mattingly). Three days later, on July 6, the petitioners filed another motion to show cause and obtained an ex parte order setting a show cause hearing for July 14, 2017.

On July 7, 2017, Smith filed a "Memorandum of Authorities in Support of Writ of Mandamus" in which he provided argument as to why ALWA was regulated under the WBCA and not the WNCA. Smith also renewed his disagreement with Davis as to whether at the March 2017 meeting Smith was provided with the reports and records that he had requested at that time. He pointed out that in an April 2017 e-mail to Elston, he asked to "see the evidence" supporting allegations that Elston had raised in an earlier e-mail, along with a 2013 audit report, as well as "[a]ny published court decisions" regarding a 2011 lawsuit. Smith also requested attorney fees under RCW 23B.16.040, arguing, among other things, that ALWA and Elston "have acted in bad faith in denying Petitioners, particularly Scott Smith, access to the records and books of [ALWA] for inspection and copying."

ALWA and Elston also responded to the trial court's second show cause order and filed an accompanying declaration from Zandell. In his declaration, Zandell stated that on July 11, 2017, he e-mailed copies of the following ALWA documents to Smith's attorney:

    a. Articles of Incorporation (2009 version);
    b. Draft coversheet for Articles of Amendment (2009);
    c. Bylaws (current);
    d. Employee Policy & Procedure Manual; and,
    e. Operating Procedures.

Zandell also declared that on July 12, 2017, Smith picked up the following

documents from Zandell's office after Zandell notified Smith's counsel that they were available:

    a. IRS Form 990's (2010 – 2015);
    b. Profit & Loss Statements (2010-2011 – 2015-2016);
    c. Balance Sheets (2011 – 2016);
    d. Department Executive Committee Minutes (2010 – 2015);
    e. Finance Commission Minutes (2006 – 2016);
    f. Audit Commission Minutes (2006 – 2016); and
    g. State Convention Minutes (2006 – 2016).

Zandell further declared that on July 12, 2017, he e-mailed to Smith's attorney all of the documents he received in response to a request to the Washington Secretary of State for all records on file for ALWA. Included in those documents was a copy of ALWA's current articles of incorporation.

In their response to the second show cause order, ALWA and Elston also provided argument that ALWA was regulated under the WNCA and, thus, RCW 23B.16.040, which is part of the WBCA, did not apply to ALWA. They argued that instead, the relevant statute was RCW 24.03.135, which lists corporate records subject to inspection under the WNCA. ALWA and Elston argued further that even if the WBCA *did* apply to ALWA, the petitioners did not have inspection rights under RCW 23B.16.040 because they were not "shareholders" as defined in the WBCA. They also pointed out that the petitioners had requested records for Post 110 but that Post 110 was a separate legal entity distinct from ALWA.

In a reply declaration, Smith asserted, among other things, that according to an internal ALWA subcommittee report, all of ALWA's finances are placed on a disc at the close of each year. Accordingly, Smith asserted, ALWA "can readily make a duplicate copy of the disc."

6

The court held the second show cause hearing on July 14, 2017. After hearing argument from the parties regarding, among other things, whether the WNCA or the WBCA applied, the court noted that "I do think there are unsettled issues of law here." The court also stated that ALWA was "correct that the court had strongly encouraged the parties not to simply re-note this quickly without giving the ability for communication and the attempt to get the information that you wanted." The court again strongly encouraged the parties to work together. It then entered an order striking the petitioners' motion to show cause and ordering the parties to "cooperate in a good faith attempt to resolve any and all disputes between them with regard to the petitioners' request for access to all corporate documents." It also ordered that "[a]fter 60 days and no sooner, if there are any unresolved matters, [the] parties shall bring what discernible conflicts remain, and for a definite ruling on what statutes govern [ALWA] to the court for hearing."

On September 21, 2017, Smith filed a "Motion for Order re Contempt" (Contempt Motion), in which he argued that ALWA had taken retaliatory action against various legion posts since the July 14 show cause hearing. That same day, the petitioners filed a motion "to Determine Corporate Status, to Compel Production of Corporate Records and to Award Attorney Fees and Costs" (Omnibus Motion). In a supporting declaration, Smith included a chart that he had prepared to track the documents that ALWA had provided in response to his requests and to indicate which requests had not yet been fulfilled. The petitioners also filed, together with the Contempt Motion and the Omnibus

Motion, a "Memorandum of Authorities re the History of Washington State Corporations and the American Legion Department of Washington Inc" and a separate "Memorandum of Authorities in Support of Motions."

In response, ALWA and Elston asserted that since the July 14 show cause hearing, ALWA "has worked diligently in an effort to fully respond to Mr. Smith's request." To that end, Zandell provided his own tracking chart showing what ALWA had produced in response to the Smith Records Request and declared that the only records not provided were those that "have yet to be created, do not exist or cannot be found and documents to which [ALWA] objects to producing because they contain confidential employee payroll data." ALWA and Elston also moved to continue the hearing on the Contempt Motion and the Omnibus Motion, arguing that the petitioners had not timely served the motions and that they did not comply with the local court rules regarding page limits. The court granted the motion to continue, and Smith filed an updated notice of hearing to reflect the continuance. In that notice, Smith withdrew the Contempt Motion.

ALWA and Elston filed a supplemental response to the Omnibus Motion on October 10, 2017. They renewed their argument that ALWA was governed by the WNCA. They also addressed each category of requested records that ALWA had not yet provided and stated their reasons for not providing them. Finally, ALWA and Elston argued that the petitioners were not entitled to fees under RCW 23B.16.040(3), not only because the WBCA did not apply, but also because none of the petitioners made a request for records that was denied prior to their filing suit.

8

The court held a hearing on October 18, 2017, after the petitioners made additional written submissions—including declarations from Mattingly and Smith in which they disagreed, among other things, with ALWA's characterization of the completeness of its records productions to date. At the hearing, the trial court ruled that ALWA is governed by the WBCA and not the WNCA, while "fully acknowledging that this is not a particularly clear set of statutes." It also concluded that the petitioners were entitled to inspect ALWA's books and records under chapter 23B.16 RCW, and that the records subject to inspection under RCW 23B.16.020 included "all records related to the income and expenses of [ALWA]" but not "employee complaints" or "records of lawsuits." It clarified further that ALWA would be required only to disclose its side of any financial records of interactions with Post 110. It also found it appropriate "to impose reasonable restrictions on the distribution of the accounting records that are provided by [ALWA] to the Petitioners and their counsel" and ordered that "[i]f there is a request for the petitioners to provide duplicate copies of those records to anyone else, they will need to come back to court and ask for permission."

Before hearing argument with regard to the petitioners' request for attorney fees, the court stated:

> I will tell you that based upon my ruling I think it's obvious I think there was a legitimate legal dispute in this case as to whether RCW 24.03 applied or whether RCW 23B applied, and so what I would ask is the parties to keep that in mind as they make their argument about whether costs and counsel fees should be ordered by the court.

The trial court ultimately denied the petitioners' request for attorney fees, without prejudice. It explained during the hearing:

9

> The court going through this record again in preparation of today's hearing does not find a basis to award attorney's fees, and that's for a number of reasons. So what the court will do today is deny without prejudice that request. If petitioners want to make a request based upon the court's rulings, and again going back carefully through the requests what was provided and what disputes ultimately were ruled on, then that could be set by a future motion, but I think hopefully both of you can at least understand the court's rationale up to this point.

After additional motions practice and a two-part presentation hearing, the court entered an order on December 15, 2017, regarding the Omnibus Motion. That order was not appealed.[3]

In January 2018, the petitioners renewed their request for an award of costs and attorney fees under RCW 23B.16.040(3). The trial court denied the motion, finding that ALWA "has proved it refused inspection of certain corporate records in good faith because it had a reasonable basis for doubt about the right of the Petitioners to inspect the records demanded." During the hearing on the motion, the court explained its ruling:

> The issue is whether attorney fees should be ordered under RCW 23B.16.040 to the petitioners, and if so, in what amount. The court looking at 23B.16.040(3) – and I've read it into the record, but I'll read it again. "If the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs, including reasonable counsel fees, incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded."
> I am finding that the corporation has so proved, and I know that this is a huge point of contention for the parties, but when I review everything in this case, and also I reviewed a number of the

---

[3] Accordingly, the trial court's decisions that ALWA is governed by the WBCA and that the petitioners are entitled to inspect ALWA's books and records under the WBCA is not before us in this appeal, and we express no opinion as to the correctness of those decisions.

transcripts of hearings along the way, the court is convinced that is the right legal answer.

Now, I will tell you that I looked long and hard because from an equity standpoint I think many of the arguments [Smith's attorney] makes have an appeal to them, have a logical appeal to them, but I have to go by the statute, and that has been the guiding point for the court in this discussion, and that will be the court's ruling, and I'd sign an order to that effect.

When Smith's attorney requested clarification, the court stood by its ruling:

[M]y decision is based upon the entirety of this record because, as I said, I went back through, and it's based upon the entirety of that record, and it's based upon the statute as this court reads that statute. And so I'm not going to answer the question for clarification.

Smith (but not the other petitioners) appeals the trial court's order denying the motion for an award of fees and costs under RCW 23B.16.040(3).

ANALYSIS

Denial of Motion for Attorney Fees

Smith argues that the trial court erred by denying his motion for attorney fees under RCW 23B.16.040(3). We disagree.

*Standard of Review*

As an initial matter, the parties disagree as to the applicable standard of review. Smith argues that the standard of review is de novo because "[t]he central issue to this appeal regards the statutory interpretation of RCW 23B.16.040(3)." Meanwhile, ALWA contends that "[t]his appeal does not present an issue of statutory interpretation, however, it presents an issue of the application of a statute to a particular set of facts." Therefore, ALWA argues, the standard of review is abuse of discretion. Neither party is entirely correct.

On the one hand, Smith is correct that issues of statutory interpretation

11

are questions of law reviewed de novo. Accordingly, de novo review applies to the extent that the parties disagree about how to interpret RCW 23B.16.040(3). To that end, the parties *do* disagree as to how to interpret the statute: Specifically, Smith argues—and ALWA disagrees—that to prove that it refused inspection in good faith as contemplated by the statute, ALWA was required to prove that it had a reasonable basis for doubt as to whether Smith's demand for records was made with a proper purpose.

De novo review does not apply, however, to this court's review of the trial court's finding that ALWA satisfied its burden to prove that it refused inspection in good faith. Whether a person acted in good faith is an inherently factual issue. See Morris v. Swedish Health Servs., 148 Wn. App. 771, 778, 200 P.3d 261 (2009) (good faith usually a question of fact). And "[w]here the trial court has weighed the evidence, the reviewing court's role is simply to determine whether substantial evidence supports the findings of fact, and if so, whether the findings in turn support the trial court's conclusions of law." In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).[4]

---

[4] We acknowledge that where the record at trial consists entirely of written documents and the trial court was not required to assess witness credibility, the appellate court ordinarily applies de novo review. Dolan v. King County, 172 Wn.2d 299, 310, 258 P.3d 20 (2011). But substantial evidence review is nonetheless appropriate where, as here, competing documentary evidence had to be weighed and conflicts resolved. In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003); see also Dolan, 172 Wn.2d at 311 ("[S]ubstantial evidence is more appropriate, even if the credibility of witnesses is not specifically at issue, in cases . . . where the trial court reviewed an enormous amount of documentary evidence, weighed that evidence, resolved inevitable evidentiary conflicts and discrepancies, and issued statutorily mandated written findings.").

ALWA disagrees, contending that this court must apply an abuse of discretion standard. It chiefly relies on Nakata v. Blue Bird, Inc., 146 Wn. App. 267, 191 P.3d 900 (2008), the only reported Washington case regarding a motion for attorney fees under RCW 23B.16.040(3). In Nakata, Division Three stated, without discussion, that "'[w]e review a trial court's denial of attorney fees for an abuse of discretion.'" Nakata, 146 Wn. App. at 276 (quoting Emmerson v. Weilep, 126 Wn. App. 930, 940, 110 P.3d 214 (2005)). But the standard of review was not strictly at issue in Nakata. Furthermore, the case from which Nakata quoted, Emmerson, involved a request for an *equitable* fee award. Emmerson, 126 Wn. App. at 940. But here, RCW 23B.16.040(3) *mandates* a fee award in the shareholder's favor unless the corporation refused inspection in good faith under the statute. In other words, under RCW 23B.16.040(3), the decision whether to award fees is not a discretionary decision. Therefore, Nakata is unpersuasive here and so are the other cases that ALWA cites to argue that "several other Washington decisions have held that appellate courts review a *discretionary* decision to award or deny attorneys' fees . . . for an abuse of discretion." (Emphasis added.)

In short, we apply de novo review to resolve the parties' disagreement over how to interpret RCW 23B.16.040(3), and we apply substantial evidence review to determine whether the trial court erred by finding that ALWA proved that it refused inspection in good faith under that statute. We discuss each of these issues in turn below.

13

*Interpretation of RCW 23B.16.040(3)*

Smith contends that under RCW 23B.16.040(3), "the 'good faith' analysis is limited to whether [ALWA] had a reasonable basis to doubt that Petitioners' **purposes** in requesting inspection were [ ]proper." We disagree.

As discussed, "[t]he meaning of a statute is a question of law reviewed de novo." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. To discern a statute's plain meaning, this court considers the text of the provision in question, taking into account the statutory scheme as a whole. Campbell & Gwinn, 146 Wn.2d at 11.

Here, the text of RCW 23B.16.040(3) is clear on its face: If the court orders inspection and copying of the records demanded by a shareholder, it must also order the corporation to pay costs and fees incurred to obtain the order, "unless the corporation proves that it refused inspection *in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded.*" RCW 23B.16.040(3) (emphasis added). Smith points to nothing in the statute's text or the statutory scheme that suggests that the only way for a corporation to prove good faith under RCW 23B.16.040(3) is to prove that it had a reasonable basis to doubt that the shareholder's purposes were proper. Therefore, Smith's argument fails.

Smith relies on two pre-WBCA cases, State ex rel. Weinberg v. Pacific

Brewing & Malting Co., 21 Wash. 451, 58 P. 584 (1899), and State ex rel. Grismer v. Merger Mines Corp., 3 Wn.2d 417, 101 P.2d 308 (1940), to support his interpretation of RCW 23B.16.040(3). But Weinberg and Grismer addressed only a shareholder's common law *right of inspection.* See Weinberg, 21 Wash. at 458-59; Grismer, 3 Wn.2d at 420. Neither of these cases addressed a shareholder's right to *fees*—much less the circumstances under which attorney fees may be denied under RCW 23B.16.040(3), which was enacted long after these cases were decided. See LAWS OF 1989, ch. 165. Therefore, Smith's reliance on Weinberg and Grismer is misplaced.

Smith's reliance on Nakata is also misplaced. In Nakata, a cooperative association denied Elsie Nakata's request for documents. Nakata, 146 Wn. App. at 275. It claimed that it did so because Nakata "was not a member of the cooperative and held a position that was contrary to [the cooperative's] purposes." Nakata, 146 Wn. App. at 276. The trial court found these reasons reasonable, and although it ordered the cooperative to produce certain records, it denied Nakata's request for fees. Nakata, 146 Wn. App. 275-76. Nothing in Nakata suggests that a shareholder's improper purpose is the *only* basis on which a corporation can demonstrate good faith under RCW 23B.16.040(3). Therefore, Nakata does not support Smith's argument that ALWA was required to show it reasonably believed that Smith's purposes were improper.

Finally, Smith cites to a handful of cases from other states, arguing that they also support his proffered interpretation of RCW 23B.16.040(3). But because those cases are not binding and because the plain meaning of the

15

statute is clear, we decline to consider those out-of-state cases.

In short, we are not persuaded by Smith's argument that to demonstrate its good faith under RCW 23B.16.040(3), ALWA was required to show it had a reasonable basis for doubt about whether Smith's purposes were proper. Instead, under the statute's plain language, the relevant inquiry on review is whether substantial evidence supports the trial court's finding that ALWA refused inspection in good faith because it had a reasonable basis for doubt about Smith's right to inspect the records demanded. As discussed below, substantial evidence does support this finding.

*Substantial Evidence for the Trial Court's Finding*

The trial court's finding is supported by substantial evidence if it is supported by evidence "sufficient 'to persuade a fair-minded person of the truth of the declared premises.'" Ames v. Dep't of Health, Med. Quality Assur. Comm'n, 166 Wn.2d 255, 261, 208 P.3d 549 (2009) (internal quotation marks omitted) (quoting Heinmiller v. Dep't of Health, 127 Wn.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995)). "The substantial evidence standard 'is deferential and requires the court to view the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority.'" Mansour v. King County, 131 Wn. App. 255, 262-63, 128 P.3d 1241 (2006) (quoting Sunderland Family Treatment Servs. v. City of Pasco, 127 Wn.2d 782, 788, 903 P.2d 986 (1995)). We conclude that substantial evidence exists here.

As an initial matter, attorney fees are warranted under RCW

23B.16.040(3) only if the court orders inspection and copying "*of the records demanded.*" RCW 23B.16.040(3) (emphasis added). To this end, when viewed in the light most favorable to ALWA, the record reflects that prior to filing suit, Smith did not request any records for which the court ultimately ordered inspection.[5] Specifically, Davis declared that at the March 2017 meeting between Smith and ALWA staff, ALWA provided Smith with copies of all financial reports and records that he was requesting at that time. Smith disputed Davis's assertion, but he did not specify what records he alleges were not produced at that meeting. Cf. Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002) ("So long as substantial evidence supports the finding, it does not matter that other evidence may contradict it."). Later, in April 2017, Smith requested Post 110's 2016 Form 990, a 2013 audit report, and the records from a 2011 lawsuit. With regard to the audit report, Elston referred Smith to Whitfield, a member of ALWA's executive committee. And because the audit report was not listed in the Smith Records Request, a reasonable inference is that Smith either obtained the report from Whitfield or abandoned that request. With regard to Post 110's Form 990 and the 2011 lawsuit records, ALWA maintained below, and the trial court ultimately agreed, that Smith did not have a right to inspect those records. In

---

[5] During oral argument, Smith's counsel suggested that Smith should be allowed to benefit from earlier records requests that allegedly were made by the other petitioners. But RCW 23B.16.040(3) directs the court to "order the corporation to pay *the shareholder's* costs," referring to the shareholder who made a WBCA-compliant request for inspection and copying and was denied. RCW 23B.16.040(3); see also RCW 23B.16.040(2). And Smith has cited no authority supporting the proposition that Smith should be allowed to "piggy back" on the other petitioners' records requests for purposes of recovering his attorney fees under RCW 23B.16.040. Therefore, we reject this proposition.

short, Smith is not entitled to fees under RCW 23B.16.040(3) for ALWA's refusal to produce the limited records that Smith requested prior to filing suit because the court did not order inspection of those records.

To that end, when viewed in the light most favorable to ALWA, the record reflects that Smith did not make a statutorily compliant request for specific records until he provided the Smith Records Request to ALWA, through counsel, on June 29, 2017, i.e., after the petitioners filed their complaint. See RCW 23B.16.020(3)(b) (providing that a shareholder must describe "with reasonable particularity" the records he desires to inspect); see also RCW 23B.16.040(2) (authorizing a shareholder who complies with RCW 23B.16.020(2) and (3) to apply to the superior court for an order permitting inspection). Although Smith asserted in a declaration that he made a particularized request prior to June 29, 2017, the request to which he points is not a request for specific records, but rather a request for "full and unfettered access to the books and records," including read-only access to ALWA's accounting system so Smith could "download . . . the detail of the accounts I need to review." The timing of the Smith Records Request is noteworthy here because, due to the fact that Smith did not make a particularized request until the parties were already in litigation before a trial court that was actively involved in encouraging the parties to cooperate, the trial court in this case was particularly well positioned to determine whether ALWA's later refusals to produce certain records were made in good faith. To this end, the trial court's ultimate finding of good faith is supported by substantial evidence for a number of reasons.

18

First, the trial court itself acknowledged, with regard to the dispute about the governing statutes, that "there are unsettled issues of law here" and that "this is not a particularly clear set of statutes." It also remarked that it believed "there was a legitimate legal dispute in this case as to whether RCW 24.03 applied or whether RCW 23B applied." Although the trial court's decision that ALWA is governed by the WBCA is not before us on review, the trial court's characterization of the dispute as a "legitimate" one does not appear unwarranted. For example, ALWA was originally incorporated as a fraternal society under sections 3733 and 3734 of Remington's 1915 Code, which was enacted by Laws of 1903, ch. 80. See REM. 1915 CODE §§ 3733-3734. Those sections are now codified in chapter 24.20 RCW, which is found under Title 24 RCW, entitled "Corporations and Associations (Nonprofit)." See RCW 24.20.010., .020. This is the same title in which the WNCA appears, whereas the WBCA is codified in an entirely separate title. Additionally, although the WNCA's "Applicability" provision states that it applies to "[a]ll not for profit corporations *heretofore organized under any act hereby repealed*," RCW 24.03.010(2) (emphasis added), another WNCA provision states that it applies prospectively "to all existing corporations organized under any general act of the territory or the state of Washington providing for the organization of corporations for a purpose or purposes for which a corporation *might* be organized under this chapter." RCW 24.03.905 (emphasis added). Furthermore, after ALWA was reinstated following an administrative dissolution in 1996, the certificate of reinstatement issued by the Secretary of State states that ALWA

19

was reinstated as "a Washington Non Profit corporation." In short, the trial court's characterization of the governing law dispute as a "legitimate legal dispute" is a reasonable one and supports the trial court's finding of good faith.

Second, the record contains substantial evidence that ALWA's officers reasonably believed that the WNCA governed their affairs. For example, the record includes evidence that ALWA obtained 501(c)(3) status as early as 1946 and that it used nonprofit corporation forms for filings with the Secretary of State as early as 1969. The record also contains evidence that in 1990, ALWA applied for and obtained status as a public benefit nonprofit corporation, and this type of corporation is regulated under the WNCA. RCW 24.03.490. And, the record contains evidence that ALWA filed multiple annual reports, including its 2016 report, in which it indicated that it was regulated under chapter 24.03 RCW. In short, although the trial court ultimately concluded that ALWA was subject to the WBCA, ALWA's history, which the trial court noted was "interesting," further supports the trial court's finding of good faith.

Third, and although the trial court ultimately disagreed with ALWA with regard to the scope of the accounting records subject to inspection under the WBCA, the fact that the term "accounting records" is not defined by statute or case law supports a finding that ALWA reasonably believed that many of the records Smith was requesting were not rightfully subject to his inspection. See RCW 23B.16.020(2) (providing that shareholders who comply with the statute are entitled to inspect certain minutes and records of corporate actions, "[a]ccounting records of the corporation," and the "record of shareholders"). Indeed, the

reasonableness of ALWA's belief is further bolstered by the trial court's ultimate conclusion that the accounting records subject to Smith's inspection under the WBCA included only "records related to the income and expenses" of ALWA and did not include employee complaints, records of lawsuits, or Post 110's side of records relating to its financial relations with ALWA. Similarly, and although the trial court's conclusion that ALWA's members are "shareholders" for purposes of the WBCA is not before us in this appeal, we note that "shareholder" is defined in the relevant part as "the person in whose name shares are registered in the records of a corporation." RCW 23B.01.400(34). As such, it was not unreasonable for ALWA, which undisputedly has not issued shares, to believe that Smith was not a "shareholder" entitled to inspect records under the WBCA— even if the trial court ultimately disagreed. This, too, supports the trial court's ultimate finding of good faith.

Finally, the record reflects that after Smith made the Smith Records Request, ALWA voluntarily produced a significant number of requested records, including records that ALWA would not have been required to produce under the WNCA.[6] A reasonable inference from ALWA's production of these documents is

---

[6] Under the WNCA, the only records required to be made available for inspection are

    (1) Current articles and bylaws;
    (2) A list of members, including names, addresses, and classes of membership, if any;
    (3) Correct and adequate statements of accounts and finances;
    (4) A list of officers' and directors' names and addresses;
    (5) Minutes of the proceedings of members, if any, the board, and any minutes which may be maintained by committees of the board.

that ALWA withheld in good faith only those records it reasonably believed that Smith did not have a right to inspect. The reasonableness of ALWA's belief—particularly as it relates to ALWA's concerns about privacy—is also bolstered by the fact that (1) during the proceedings below, Smith filed sensitive financial documents without redacting them—which even the court found "troubling"—and (2) the trial court ultimately found it appropriate to prohibit the petitioners from further disclosing any records without the court's permission.

In short, substantial evidence supports the trial court's finding that the records withheld by ALWA were withheld in good faith based on a reasonable doubt as to Smith's right to inspect them.

Smith argues that ALWA's "self-asserted belief to privacy" was rejected by the court and therefore privacy concerns were not a reasonable basis for denying inspection of records containing employee payroll information. But the trial court did not reject ALWA's privacy concerns, which were based on concerns about disclosure to third parties. Instead, it gave credence to them by prohibiting the petitioners from further disclosing records without permission of the court. Therefore, Smith's argument is unpersuasive.

Smith next contends that ALWA's concerns about privacy were spurious because "there is no expectation of privacy between an employee and its employer." But this argument misses the mark because ALWA's concerns were based on potential information sharing with *third parties*, not information sharing between an employee and an employer. Therefore, we reject Smith's contention.

---

RCW 24.03.135.

22

Smith next argues that because the trial court ultimately concluded that the WBCA applies to ALWA, ALWA's "confusion" as to its own corporate form "does not pass the proverbial 'straight-face test'" and cannot serve as a reasonable basis to doubt Smith's right of inspection. Because it is not unreasonable to expect corporate officers to know what statutes govern their corporation, Smith's argument has some merit. Nevertheless, the fact that the trial court ultimately disagreed with ALWA does not mean that ALWA did not advance its argument in good faith based on a reasonable belief that the WNCA governed and that Smith was not entitled to records under the WBCA. To this end, and as discussed, the trial court itself acknowledged that the statutes were not clear and that characterization was not unwarranted. Also as discussed, the record contains substantial evidence that ALWA's officers reasonably believed that the WNCA governed their affairs. In other words, this is not a case of a corporation consistently operating as if it were governed by the WBCA and then suddenly asserting that it is governed by the WNCA simply to avoid producing records to a shareholder. Thus, Smith's suggestion that ALWA was simply making "mischief" in asserting that it was subject to the WNCA lacks merit.[7]

Smith next argues that public policy supports an award of fees. He relies on Brand v. Department of Labor & Industries, 139 Wn.2d 659, 989 P.2d 1111

---

[7] During oral argument, Smith's counsel suggested that ALWA's claimed confusion about which statute governed its affairs is a "red herring" because ALWA indicated that it would not provide certain records regardless of which statute applied. But the parts of the record on which counsel relied indicate only that ALWA did not believe that certain records were subject to disclosure under either the WBCA or the WNCA. ALWA's refusals do not negate a finding that it refused inspection in good faith.

(1999), and <u>Guillen v. Contreras</u>, 169 Wn.2d 769, 238 P.3d 1168 (2010), to support his argument, but his reliance is misplaced. In <u>Brand</u>, the plaintiff's *entitlement* to fees under the Industrial Insurance Act, Title 51 RCW, was undisputed; the issue before the court was whether the *amount* of the fee award should be reduced on account of the plaintiff's relatively small recovery. <u>Brand</u>, 139 Wn.2d at 669. In analyzing that issue, our Supreme Court looked to the relevant fee statute's underlying purpose after observing that "the statute does not address the situation at issue here, where the [Board of Insurance Appeals'] decision was only partially reversed on appeal." <u>Brand</u>, 139 Wn.2d at 666-67. But here, unlike in <u>Brand</u>, the issue is Smith's *entitlement* to fees, and that issue has been expressly addressed by the legislature in RCW 23B.16.040(3). Therefore, <u>Brand</u> is distinguishable and does not control.

<u>Guillen</u> is also distinguishable. There, the issue was the meaning of the attorney fee provision of the forfeiture statute. <u>Guillen</u>, 169 Wn.2d at 774. More specifically, the court was tasked with interpreting the meaning of "substantially prevails" in a statute that mandates an award of fees to a claimant who "substantially prevails" against a state agency in a forfeiture proceeding. <u>Guillen</u>, 169 Wn.2d at 775. In construing the statute liberally, the court observed that the purpose of the fee provision "was to provide greater protection to people whose property is seized." <u>Guillen</u>, 169 Wn.2d at 777. Specifically, the court looked to the governor's partial veto note, in which the governor wrote, "'[W]e must not sacrifice citizens' rights in our efforts to fight drug trafficking.'" <u>Guillen</u>, 169 Wn.2d at 777 n.3 (emphasis omitted) (quoting LAWS OF 2001, ch. 168 at 752-53).

Here, Smith points to no such clear statement of intent that RCW 23B.16.040(3) be construed liberally in favor of awarding fees. Therefore, Guillen is not persuasive.

Finally, Smith argues that remand is required because the trial court's order denying fees "made no findings, much less detailed ones, which specified a good faith basis for [ALWA]'s refusal to provide the financial records required by statute." This argument is unpersuasive for three reasons. First, the trial court *did* make the ultimate finding required under RCW 23B.16.040(3), i.e., that ALWA "refused inspection of certain corporate records in good faith because it had a reasonable basis for doubt about the right of the Petitioners to inspect the records demanded." Second, the trial court's decision denying an award of fees under RCW 23B.16.040(3) is not a type of decision for which findings are specifically required under CR 52(a)(2). Third and finally, the lack of more specific factual findings does not preclude meaningful appellate review here. See In re Dependency of K.R., 128 Wn.2d 129, 143, 904 P.2d 1132 (1995) (observing that findings that parrot statutory requirements are not invalid if they are specific enough to permit meaningful review). This is particularly so because the trial court's colloquy with counsel makes clear that the "legitimate" dispute about the governing statutes and the "interesting" way in which ALWA had historically viewed itself under a "not . . . particularly clear set of statutes" played significant roles in the court's decision. Remand is not necessary.

## Fees on Appeal

Both Smith and ALWA request an award of fees under RAP 18.1. We

deny both requests.

A party requesting fees under RAP 18.1 must provide argument and citation to authority "to advise the court of the appropriate grounds for an award of attorney fees as costs." Stiles v. Kearney, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

Here, Smith argues that he is entitled to fees on appeal under RCW 23B.16.040(3), i.e., the same statute under which the trial court denied an award of fees. But because Smith is not the prevailing party on appeal, we deny his request.

ALWA argues that it is entitled to attorney fees under RCW 4.84.185, which authorizes an award of fees to the prevailing party if the nonprevailing party's position was frivolous and advanced without reasonable cause.

But assuming without deciding that RCW 4.84.185 authorizes an award of fees on appeal, Smith's appeal was not frivolous. "An appeal . . . is frivolous if there are 'no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility' of success." In re Recall of Feetham, 149 Wn.2d 860, 872, 72 P.3d 741 (2003) (internal quotation marks omitted) (quoting Millers Cas. Ins. Co. of Texas v. Briggs, 100 Wn.2d 9, 15, 665 P.2d 887 (1983)). Here, Smith provided a debatable issue with regard to the applicable standard of review. And given the complete absence of binding authority with regard to RCW 23B.16.040(3), it cannot be said that Smith's appeal was devoid of merit or that there was no reasonable possibility of success. Therefore, we deny ALWA's request for an award of fees on appeal.

ALWA argues that Smith's appeal is frivolous because "the standard of review is abuse of discretion and . . . the Superior Court had several different tenable grounds on which it based its order." But as discussed, the standard of review is *not* abuse of discretion. And even if it were, reasonable minds might differ—again because of the lack of relevant binding authority—about the tenability of each potential ground for the trial court's denial of fees. ALWA's argument is unpersuasive.

We affirm.

WE CONCUR: